### AUSTIN v. PIEDMONT MFG. CO.

1. NONSUIT—RELEASE.—It is error to grant nonsuit in action for damages for personal injuries on ground that money paid plaintiff for release was not repaid or tendered defendant.

2. NONSUIT will only be sustained where the allegations of the complaint are sustained by the testimony in cases where the complaint is subject to demurrer.

3. ADDITIONAL GROUNDS.—NONSUIT cannot be sustained on additional grounds not urged on Circuit.

Before WATTS, J., Greenville, November, 1902. Reversed.

Action by Joseph Austin against Piedmont Manufacturing Co. From judgment of nonsuit, plaintiff appeals.

*Messrs. Blythe & Blythe,* for appellant, cite: *There being evidence to sustain the allegations of the complaint, nonsuit was error:* 53 S. C., 159; 20 Ency., 55; 60 S. C., 168; 61 S. C., 487; 51 S. C., 234; 55 S. C., 424; 62 S. C., 136; 25 S. C., 128; 42 S. C., 470; 18 S. C., 280; 51 S. C., 222; 52 S. C., 363. *Assumption of risks is for jury:* 55 S. C., 103; 52 S. C., 443; 61 S. C., 478. *And it should have been pleaded:* 13 Ency. P. & P., 914. *On motion for nonsuit no*

*other grounds can be considered than those made on Circuit:*
55 S. C., 337; 53 S. C., 139; 61 S. C., 409; 64 S. C., 579;
58 S. C., 76. *Release could not be made basis of nonsuit:*
26 S. C., 264. *Not necessary to tender consideration:* 56
S. C., 513; 61 S. C., 455. *Delay does not bar repayment:*
4 DeS. Eq., 706.

*Messrs. T. Q.* and *A. H. Donaldson* and *Carey & McCul-
lough,* contra. The former cite: *Evidence as to subsequent
precautions against danger is not competent:* 114 U. S.,
202; 30 Minn., 465. *As to fitness of appliances:* Wood on
Mas. & Ser., sec. 331; 20 Ency., 2 ed., 87; 39 S. C., 39. *Re-
lease is bar:* 33 S. C., 556; 38 S. C., 210; 55 S. C., 152;
56 S. C., 513; 61 S. C., 537, 548; 93 U. S., 62.

*Mr. McCullough* cites: *Negligence is dependent on sur-
roundings:* 78 F. R., 78; 21 S. C., 100, 541; 22 S. C., 557;
26 S. C., 490; 27 S. C., 71; 41 S. C., 388; 44 S. C., 442;
45 S. C., 278. *If there be only one inference from facts, it
is question of law:* 52 S. C., 438; 53 S. C., 363; 55 S. C.,
101, 483; 64 S. C., 214. *Plaintiff should have returned
consideration for release:* 56 S. C., 513; 61 S. C., 455; 76
Am. Dec., 167; 14 Ency., 162; 43 Am. Dec., 651; 1 Strob.
L., 400; 65 F. R., 462; 21 Ency., 82; 93 Am. Dec., 204;
61 S. C., 448; 37 S. C., 17; Chev. Law, 190. *As to
tender:* Chev. L., 152; 64 F. R., 53; 2 Mills Con. R., 76;
20 Am. Dec., 694; 76 Am. Dec., 170; 93 Am. Dec., 204;
25 Ency., 901.

July 14, 1903. The opinion of the Court was delivered by

Mr. Justice Gary. This is an appeal from an order
of nonsuit. In order to understand clearly the question pre-
sented by the exceptions, it will be necessary to refer to the
pleadings. The material allegations of the complaint are
as follows:

"II. That on the 27th day of December, A. D. 1898, the
above named plaintiff was regularly in the employment of

the said defendant as a general day laborer, and was doing duty as such on said date.

"III. That on said date the plaintiff was ordered by said defendant to assist in carrying certain looms from one of its patforms, built and used by it, into its weave room in one of its aforesaid buildings at Piedmont, and while so engaged in said work the said looms were placed by plaintiff and other employees of said company on a truck or 'dolly,' as directed by defendant, and rolled down said platform and along a narrow gangway connecting said platform with said building and into the same, and deposited in said weave room in said building.

"IV. That said plaintiff, obeying his said orders, and assisted by said other employees of said company, carried said looms into said building and deposited them as directed. That having deposited said looms as aforesaid, and while bringing said truck or 'dolly' out of said building, and just as plaintiff stepped out of said door on the said narrow gangway, without any fault or negligence on his part, plaintiff's foot slipped off of said narrow gangway and he fell to the ground below, a distance of about twelve feet, whereby he sustained the injuries hereinafter described.

"V. That the injuries sustained by plaintiff were due to the negligence, fault and carelessness of the defendant in the following particulars : That said truck or 'dolly' so used was not suitable for the purpose of moving said looms, it being very low and heavy, and unsupplied with any tongue or arm or other appliance for moving the same; that said gangway leading from said platform to said building was very narrow and wholly unprotected by railing; that the unsuitableness of said truck or 'dolly' and the unsafe and unprotected condition of said gangway were well known to the defendant when plaintiff was directed to perform the duties assigned to him."

For a second cause of action:

"II. That on the 11th day of July, A. D. 1899, the above named plaintiff was regularly in the employ of the said de-

fendant as a general day laborer, and was doing duty as such on said date.

"III. That on the 11th day of July, A. D. 1899, the said defendant was engaged in erecting and building a fire proof, brick partition wall in the interior of one of its said buildings, the same extending from one wall to the other across said building, and being about 80 feet long, 20 inches thick and 30 feet high, and, by the direction of the defendant, plaintiff was assisting in said work by making and carrying mortar for said work.

"IV. That on said day when said wall was almost completed, and while plaintiff, under the direction of the defendant, was engaged in putting the finishing touches thereon and being very near thereto, the said wall suddenly collapsed, crumbled and fell, falling on plaintiff, knocking him to the ground and burying him under the ruins thereof, whereby he received great bodily injury. * * *

"V. That the aforesaid injuries to plaintiff were caused by the negligence, fault and carelessness of the defendant in the building of said wall, in that the same was negligently and unskillfully constructed; that the said wall was not properly and securely joined on to the walls of said building on either side; that the said brick used in the construction of said wall were improperly laid; that the lime used in making the mortar in which said brick were laid was defective and worthless, and said mortar was, therefore, unsuitable for the purpose for whch it was used; and that all the aforesaid defects and imperfections in the construction of and the material used in building said wall were well known to the defendant; by reason of all and each of which acts of negligence on the part of said defendant, plaintiff was wounded and injured as aforesaid."

The defendant denied the allegations of the first cause of action, and set up the defense of contributory negligence. The defendant also denied the allegations of the second cause of action, set up the defense of contributory negligence and likewise set up the following as a third defense: "The

defendant alleges that on the 28th day of July, 1899, he executed and delivered for value received to the defendant his certain release under seal, of which the following is a copy: 'In consideration of the Piedmont Manufacturing Co. paying my doctor's bills and nursing, and allowing me 60 cents per day from the 11th July to date, and in further consideration of its giving me $47.00, I hereby release the said company for any loss, injury or damage, received by me through the falling of the warehouse wall on the 11th July, the said amounts being in full satisfaction of all claims or demands. This the 28th day of July, 1899. Joe [his X mark] Austin (L. S.) Witness J. M. Richardson. And this defendant further alleges that in the face of said release, this plaintiff has no right to entertain this action."

Upon motion of defendant, plaintiff was ordered to reply to the last mentioned defense, and accordingly served the following:

"I. That he has no recollection of ever having signed the release set forth as a third defense in defendant's amended answer; but plaintiff is informed and believes that a few days after he was injured, as alleged in the complaint herein, and while he was wholly prostrated in mind and body, and suffering great bodily pain and mental anguish, and wholly incapable of attending to any kind of business, one Dr. J. M. Richardson, who was the physician employed by the defendant to attend upon plaintiff, acting for the defendant company, induced plaintiff to allow him, the said Dr. J. M. Richardson, to sign plaintiff's name to said pretended release, and the said Dr. Richardson did accordingly sign plaintiff's name thereto; plaintiff, therefore, admits that he did sign said pretended release in the manner and under the conditions above set forth.

"II. Further replying, plaintiff alleges that at the time he signed said pretended release, on account of his mental and physical condition, he did not, and could not, understand the terms, scope and effect thereof; but after plaintiff was so far recovered as to be able to enquire into the matter, he was in-

formed and now believes, that at the time the said paper was
signed, the said Dr. Richardson, as agent of the defendant,
handed to the wife of plaintiff $47, as the consideration of the
said pretended release, which money his wife deposited with the
defendant company, and afterwards, from time to time, drew
out and used as the necessities of the family required, and
all of which was consumed before plaintiff was able to leave
his bed.    This is all that plaintiff or his family ever received
on account of said pretended release, and plaintiff was in-
formed, and always believed until long after this action had
been commenced, that the aforesaid sum represented three
months' wages at 60 cents per day, which defendant ad-
vanced to plaintiff.

"III. Further replying, plaintiff alleges that after he had
so far recovered as to be able to attend to business, he sought
legal advice as to his right to damages for the injuries set
out in the complaint herein, and was informed that, so far
as the injuries set forth in his second cause of action were
concerned, he would have to pay back to the defendant the
amount of the consideration of the said pretended release, be-
fore he could bring suit to recover damages for said injuries.

"IV. That on account of the injuries mentioned in the
complaint, plaintiff was for a long time unable to do any kind
of work, and was, therefore, unable to repay to defendant
the amount of the consideration of the alleged release; but
during the summer of A. D. 1901, he arranged to repay said
amount, and thereupon through his attorneys wrote the de-
fendant as follows:"

Then followed the lengthy correspondence between the
parties.    In one of the letters from plaintiff's attorneys to
the defendant company is the following: "He was in such a
pitiable condition at the time the said release was executed
that he has but a faint recollection of the circumstances at-
tending it, he, therefore, does not recollect the exact amounts
that formed the consideration of the said release; but if you
will send to us an itemized statement of the said amounts,
with interest added, we will send you a check for the amount

as soon as we can have such statement verified by him. When you send this statement, please send us also a copy of the release which he signed."

Col. J. L. Orr, the president of the defendant company, replied to this letter. The plaintiff's attorneys again wrote to the defendant company: "On the 27th ult. we wrote you concerning the claim of Mr. Joseph Austin for damages for personal injury while in your employment. We are in receipt of a letter from Jas. L. Orr of the 28th ult., replying to that letter. In our letter we asked for a copy of the release referred to, but no copy has ever been sent us. Col. Orr gave us an itemized statement of what he claimed to be the consideration of the release, aggregating $96.05. We have since seen Mr. Austin, who expressed surprise that the consideration of the said release was so much, his recollection being that the amount of the consideration was $47. However, he instructed us to repay to you the full amount of the consideration of the said release upon your surrendering the same to us. We are, therefore, ready and prepared to pay you the full amount of the consideration of the said release upon your notifying us that you are willing to accept the same. Please let us hear from you and oblige, yours very truly, Blythe & Blythe." It is alleged that the defendant received said letter the same day, but never accepted the offer therein made, and never replied thereto.

At the close of plaintiff's testimony, the defendant made a motion for a nonsuit on the sole ground that "there was not a scintilla of testimony to sustain the material allegations of the complaint." The following are the reasons stated by his Honor, the presiding Judge, in granting the order of nonsuit: "Gentlemen, as to the motion for a nonsuit, there is no testimony to show that there was ever any tender of the money within a reasonable time. It is very clear that if they made any offer to rescind and annul the contract, that over two years had passed before he offered it. The testimony shows that he knew of this contract just after he was injured, but he waited two years before he made any effort to raise

the money.    It gave him a chance to raise two crops.    Now, the dispute here is whether or not the money was paid back. I am like Mr. McCullough; they must pay money or tender it.    Now, take the correspondence in this case; they never did make any tender of the money, but stated that if Col. Orr would surrender the release, that they would pay the money. If you wanted to pay this money, you ought to have paid the money or tendered it.    I don't think Col. Orr was bound to surrender the release without the tender of the money. So for this reason I will grant the nonsuit on the second cause of action.    In the first cause of action, you allege that the 'dolly' was not properly fixed up, and there is no testimony to show that they make any other kind for what this one was used.    There is no testimony showing that there are any better made, but, on the contrary, the plaintiff says that this is the only kind he ever saw, and there is no evidence of any defect in the premises.    For that reason I will grant the nonsuit."

The plaintiff appealed from said order upon several exceptions.

*Opinion.*—It is only necessary to cite the case of *Copeland* v. *Western Assurance Co.*, 43 S. C., 26, to show that the presiding Judge was in error when he granted the nonsuit as to the second cause of action.    Furthermore, there was testimony tending to prove every fact alleged, both in the first and second cause of action.    In such cases, a motion for nonsuit is not the appropriate remedy. The only instances in which the Court will sustain a nonsuit, when the allegations are sustained by the testimony, are in cases where the complaint is subject to a demurrer, as in *Rosemond* v. *R. R.*, 66 S. C., 91.    In *Boyd* v. *Brent,* 1 Treadway, 101, it was decided that if the declaration does not contain any cause of action, the proper way of taking advantage of it is to demur; but where a nonsuit had been ordered, the Court refused to set it aside, on grounds of convenience, as it was clear that the plaintiff could not recover.    In *Pettis* v. *Harris,* 2 Brevard, 388, the

9—67

Court ruled that a nonsuit may be ordered, though the cause be at issue before the jury, and there is evidence offered pertinent to the issue, if it be clear there is no sufficient legal cause of action stated in the declaration. See, also, *Lindsay* v. *Jamison,* 4 McC., 93. But in the case under consideration both the first and second causes of action were sufficient in form. The presiding Judge erred in granting the nonsuit as to the first as well as the second cause of action. These views render unnecessary the consideration of the other questions raised by the exceptions.

The respondent gave notice that it would ask that the nonsuit be sustained upon additional grounds mentioned in the record, but they cannot be considered, as they were not urged before the Court.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the cause remanded to that Court for a new trial.