6956

RIPPY v. SOUTHERN RY.

1. MASTER AND SERVANT—FELLOW-SERVANT.—If one in control of servants of a railroad company while doing manual labor with the servants under his control, pursuant to and in furtherance of instructions previously given by him in regard to this particular work, neglects to do an act which he assumes to do, by which an employee under him is injured, the master is responsible.

2. IBID.—IBID.—ISSUES.—Whether one having charge of employees is acting in the capacity of a superintendent or a fellow-servant at the time of an injury to an employee, is for the jury.

3. WANTONNESS.—In this case there was no evidence of wantonness.

4. Nonsuit properly refused here, because the evidence does not show conclusively contributory negligence or assumption of risks by plaintiff.

5. Constitutional Law—Appeal.—Constitutional question not made, and ruling requested on Circuit will not be considered on appeal.

Before Purdy, J., Cherokee, July, 1907.   Reversed.

Action by W. Pink Rippy against Southern Railway Company. From order of nonsuit on circuit, plaintiff appeals.

*Mr. N. W. Hardin,* for appellant, cites: *Plaintiff was injured by the negligence of the master:* Sec. 15, art. IX, Con.; 56 S. C., 455; 23 S. C., 529; 73 S. C., 571, 502; 70 S. C., 327; 1 Lab. on M. & S., 12, 13, 14; 51 S. C., 96; 71 S. C., 50; 18 S. C., 262.   *There was intentional wrong here:* 54 S. C., 305; 74 S. C., 391; 46 S. C., 104; 60 S. C., 9; 61 S. C., 481.   *Contributory negligence is matter of defense and cannot be considered on motion for nonsuit:* 34 S. C., 211; 25 S. C., 128; 26 S. C., 49; 29 S. C., 309.

*Messrs. Sanders & DePass,* contra, cite: *Whether the offending servant was a fellow-servant depends upon the character of the work:* 39 S. C., 510; 51 S. C., 96; 71 S. C., 53; LaBatt on M. & S., secs. 679, 688; 26 Cyc., 1364; 36 So., 691.   *If sec 15, art. IX. of Constitution applies to this case, it violates the Federal Constitution:* 40 Minn., 249; 8 L. R. A., 419; 1 L. R. A., 696; 88 Miss., 314; 127 U. S., 205; 49 N. W., 302; 24 N. W., 600.

July 13, 1908.   The opinion of the Court was delivered by

Mr. Justice Gary.   This is an action for damages, alleged to have been sustained by the plaintiff through the negligence and wantonness of the defendant.

The allegations of the complaint, material to the questions to be considered, are as follows:

"That at the times herein mentioned the plaintiff was employed by the defendant as fireman of a stationary engine at the shops of the defendant in Blacksburg, S. C.

"That the defendant, on October 3, 1904, in its yards at Blacksburg, was loading some car wheels attached to axles on to a gondola car, by placing skids or long timbers on the railroad track up into the car, and the said car wheels, which were attached to the axles, were placed upon the railroad track by the force of a number of hands in the employment of the defendant, pushed along the railroad track up and into the gondola car, which operation was very dangerous unless proper checks or blocks were kept immediately behind the car wheels as they ascended the skids.

"That the said loading of car wheels was under the control and orders of the yard foreman or superintendent of the defendant, one Wade White; that on the date above mentioned the said foreman ordered the plaintiff from his engine-house and ordered him to assist in loading the said car wheels, and in obeying said orders he assisted in pushing a pair of said wheels along the track and upon the skids or timbers, knowing at the time that the same could be done with safety if the said foreman kept the checks and blocks in behind the wheels as they ascended the skids, but when the car wheels were about half up the skids, the said foreman negligently, carelessly and wantonly failed to place the said blocks or checks behind the car wheels, *as was his duty to do,* and the same, in consequence of his failure, came violently and suddenly back upon the plaintiff with great force." (Italics ours.)

The defendant denied these allegations and set up as defenses assumption of risk and contributory negligence.

At the close of the plaintiff's testimony the defendant made a motion for nonsuit, on the following grounds:

That there was no testimony tending to show negligence or wantonness on the part of the defendant.

That if there was evidence of negligence, it was that of a fellow-servant.

And that the testimony sustained the defenses of assumption of risk and contributory negligence.

The plaintiff testified to the following facts: "Q. Please tell the jury how this happened. A. Well, we were rolling car wheels up into the gondola on the skids, the skids were placed from the track into the gondola, which threw it up some, I suppose three or three and a half feet high. We had those wheels placed back forty or fifey feet from the end of the skids, and rolled down where we started at the skid, and there were four of us. Mr. White was doing the jacking, whenever they started up the skids. Q. *It was his duty to do what?* A. *To put the jacks under the wheels.* Q. He failed to put the jack under it and it started back? A. Yes, sir. Q. How did you happen to go out there and do this work? A. Mr. White came and told me he wanted me to prepare my boiler with a good fire, so I could help load these wheels. Q. *He directed you to do this work?* A. *Yes, sir;* said while I was doing that they would get the wheels off the turntable. Q. *He directed you to go out there and do this particular kind of work?* A. Yes, sir. Q. Mr. White was to do what? A. To keep the jack under it. Q. While you pushed it up? A. Yes, sir. He told me to go and get the jack. I brought it out there, expecting to jack as we usually did, *and he said he was going to jack and for me to roll.* Q. What caused the wheel to roll on you? A. Mr. White failed to put the jack under it, and it started back. Q. Mr. White was working right along after you all doing this jacking? A. He had been doing it. Q. Just like you had done on previous occasions? A. Yes, sir; that time he failed to put the jack under it. I don't know what for." (Italics ours.)

Asa Colvin, a witness for the plaintiff, testified: "Q. You had been helping to load wheels before? A. Yes, sir. Q. Just like Rippy had? A. Yes, sir. Q. All men there helped to load those wheels? A. Yes, sir. Q. Mr. White as well? A. Yes, sir. Q. Sometimes he would jack? A. Sometimes

Mr. Rippy would jack.   Q. Who else would jack?   A. I
don't think anybody else jacked but Mr. Rippy and Mr.
White.   Q. Mr. Rippy and Mr. White would take turn
about?   A. Yes, sir.   *Q. Who was the foreman in the yard
there?   A. Mr. White.   Q. He directed you what to do?   A.
Yes, sir.   Q. He was the man who controlled everything?
A. Yes, sir.*"

His Honor, the presiding Judge, granted the motion for
nonsuit on the following grounds: (1) Because there was
no evidence of wilfulness or wantonness on which punitive
damages could be based, and (2) because if there was any
negligence the evidence shows that it was the negligence of
J. W. White, acting as colaborer with the plaintiff, in failing
to check the wheels, and was engaged as a fellow-servant,
along with the plaintiff, in a common enterprise and per-
forming the act of a common laborer—for which negligence
the master is not liable.

The plaintiff appealed from the order of nonsuit; and
the first question that will be considered is, whether
there was any evidence of negligence that should
have been submitted to the jury.

Section 15, article IX, of the Constitution provides that,
"every employee of any railroad corporation shall have
the same rights and remedies for any injury suffered by
him, from the acts or omissions of said corporations or its
employees, as are allowed by law to other persons not em-
ployees, when the injury results from the negligence of a
superior agent or officer, or of a person having a right to
control or direct the services of a party injured." * * *

The testimony not only tends to show that the superin-
tendent or foreman, White, had a general control over the
plaintiff, *but that the plaintiff was working under his direc-
tion and control at the time he was injured.*

We desire to call special attention to the words of his
Honor, the presiding Judge, in ruling upon the motion for
a nonsuit, to wit: "In this case the testimony is, that Mr.

White *had charge of this work and he was directing it.*"
(Italics ours.)

The respondent's attorneys in their argument quote
the following language from 26 Cyc., 1364-5 : "The act must
be that of a superintendent 'exercising superintendence.' In
other words, when the negligence of a superintendent is
relied upon, the negligence complained of must occur, not
only during the superintendence, but substantially in the
exercise of it. An act may be one of superintendence where
it relates to the furnishing a safe place to work, or safe
appliances, or to the keeping of them in a safe condition.
On the other hand, the act is not one of superintendence
where, at the time and in doing the act complained of, he
is engaged in mere manual labor which is the duty of a com-
mon workman. But it is held that he is engaged in an act
of superintendence, although he is at the time of the injury
performing an act of manual labor, where it is done pursuant
to directing the work and in furtherance thereof."

This case comes within the principle therein stated, as
White, at the time of the injury, was performing an act of
manual labor, *pursuant to and in furtherance of the direc-
tions which he had previously given in regard to this par-
ticular work.*

If White had been guilty of negligence in giving direc-
tions to one of the other servants, in consequence of which
the plaintiff was injured, the defendant would have been
liable for the injury, as will be seen by reference to the case
of *Rutherford* v. *R. R.*, 56 S. C., 446, 35 S. E., 136, in which
it was held that a fellow-servant rightfully in charge of the
work being performed by railroad employees, whether
appointed by the foreman or selected by the employees them-
selves, and by the foreman allowed to direct the work, is
within the meaning of sec. 15, art. IX, of the Constitution,
for whose negligence the railroad is responsible. See, also,
*Bussey* v. *R. R.*, 52 S. C., 438, 30 S. E., 477.

If, while in control of the work and while directing the servants under him, he sees fit to perform an act of manual labor, he does not thereby cease to be a superintendent, for whose negligence the railroad company is responsible.

Furthermore, the complaint alleges that it was the duty of White to place the blocks or checks behind the car wheels; and not only was there testimony tending to sustain this allegation, but every other set out in the complaint.

In such cases the rule is thus stated in *Austin* v. *Manufacturing Co.*, 67 S. C., 122, 45 S. E., 135: "There was testimony tending to prove every fact alleged, both in the first and second cause of action. In such cases a motion for nonsuit is not the appropriate remedy. The only instances in which the Court will sustain a nonsuit, when the allegations are sustained by the testimony, are in cases where the complaint is subject to a demurrer, as in *Rosemond* v. *R. R.*, 66 S. C., 91, 44 S. E., 574. In *Boyd* v. *Brent*, 1 Treadway, 101, it was decided that if the declaration does not contain any cause of action, the proper way of taking advantage of it is to demur; but where a nonsuit had been ordered, the Court refused to set it aside, on grounds of convenience, as it was clear that the plaintiff could not recover. In *Pettis* v. *Harris*, 2 Brevard, 388, the Court ruled that a nonsuit may be ordered, though the cause be at issue before the jury, and there is evidence offered pertinent to the issue, if it be clear there is no sufficient legal cause of action stated in the declaration. See, also, *Lindsay* v. *Jamison*, 4 McC., 93."

The cases of *Rutherford* v. *R. R.*, 56 S. C., 446, 35 S. E., 136, and *Bussey* v. *R. R.*, 52 S. C., 438, 30 S. E., 477, show that the complaint was not subject to demurrer; and the case of *Wilson* v. *R. R.*, 51 S. C., 79, 28 S. E., 91, is authority for the proposition that the question whether White was acting in the capacity of superintendent, or as a fellow-servant of the plaintiff, at the time of the injury, should have been submitted to the jury.

We quote the following language from that case: "The second question raised by the exceptions is, Was there error on the part of the presiding Judge in submitting to the jury the question whether the plaintiff and the employees of the defendant, through whose negligence the injury to the plaintiff is alleged to have been sustained, were fellow-servants? Whether an engineer, brakeman or switchman is, when exercising his ordinary duties, a fellow-servant with a car cleaner, is a question of law. But whether, in a particular case, either of them was engaged in performing certain acts which the law requires of the master, and which would prevent them from being fellow-servants, is a question of fact, to be determined by the jury. The question as to who are fellow-servants is a mixed question of law and fact. It is for the Court to define the relation of fellow-servants, but it is for the jury to determine whether the employees in a particular case come within the definition."

The exceptions raising this question are sustained.

The exception assigning error in granting the nonsuit on the ground that there was no testimony tending to show that the plaintiff was entitled to punitive damages cannot be sustained, as there was no evidence of wantonness.

The defendant gave notice that it would ask that the order of nonsuit be affirmed upon the additional grounds that the testimony sustained the defenses of contributory negligence and assumption of risk.

As there was testimony to the effect that White, as superintendent, was guilty of negligence, his Honor, the presiding Judge, properly refused the nonsuit on the additional grounds mentioned in the said defenses, and the evidence does not conclusively show that the plaintiff was guilty of negligence.

The respondent's attorneys contend that the plaintiff does not come within the provisions of sec. 15, art. IX, of the

Constitution, or that, if he does, said provision is antagonistic to the Federal Constitution.

The record does not show that the Circuit Judge was requested to rule upon this question; it, therefore, is not properly before this Court for consideration.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the case remanded for a new trial.