## 11146

### KELL v. ROCK HILL FERTILIZER CO.

#### (116 S. E., 97)

1. MASTER AND SERVANT—MASTER FURNISHING REASONABLY SAFE PLACE TO WORK, ETC., MUST EXERCISE DUE CARE TO MAINTAIN CONDITIONS BY PROVIDING REASONABLY ADEQUATE SUPERVISION.—The master having furnished reasonably safe place and appliances, an adequate force of competent help, and a reasonably adequate plan and rules, must exercise due care to maintain such conditions by providing reasonably adequate supervision.

2. MASTER AND SERVANT—MASTER NOT BOUND TO SUPERVISE MERE EXECUTIVE DETAILS OF WORK.—A master is not bound to supervise mere executive details of the work to be done by his servants.

3. MASTER AND SERVANT—WHEN RISK OF INJURY FROM ACTS OF FELLOW SERVANT IS ASSUMED, STATED.—If the danger which results in a servant's injury is caused by a fellow servant's negligence in a detail of the work not due to any breach of the master's nondelegable duties, the implied risk of such injury is assumed by the injured servant.

4. MASTER AND SERVANT—TEST IN DETERMINING WHO ARE FELLOW SERVANTS, STATED.—The test in determining who are fellow servants, for injuries from whose negligent acts the master is absolved from liability, is whether the offending servant's act was done in the performance of some duty owed by the master to the injured servant, the discharge of which was intrusted to the offending servant.

14—S. C.—123

5. MASTER AND SERVANT—MASTER MUST SEE THAT NUMBER OF EM-
PLOYEES IS SUFFICIENT TO PREVENT EXPOSURE TO RISKS RESULTING
FROM INADEQUACY OF FORCE.—It is the master's absolute duty to
see that the number of persons employed is sufficient to prevent each
from being exposed to risks resulting from inadequacy of the force
available for the work in hand.

6. MASTER AND SERVANT—WHETHER FALL OF GIN POLE KNOCKING DE-
CEASED OFF BEAM WAS DUE TO MASTER'S FAILURE TO FURNISH ADE-
QUATE SUPPLY OF MEN HELD FOR JURY.—Whether the fall of a gin
pole, which knocked deceased off the end of a beam which he was
engaged in realigning, was due to the master's failure to furnish an
adequate supply of men for the work in hand, held for the jury.

7. MASTER AND SERVANT—DUTY OF SUPERVISION EXTENDS TO PREVENTION
OF SUCH INJURIES FROM FELLOW EMPLOYEE'S CARELESSNESS IN EXE-
CUTING DETAILS AS MIGHT BE REASONABLY ANTICIPATED AND PRO-
VIDED AGAINST.—The master's duty of supervision extends to the
prevention of such injuries from the carelessness of fellow employees
in executing details of the work as might be reasonably anticipated
and provided against by proper organization and executive planning
and by the adoption of proper methods, rules and regulations for
carrying on the work, considered with due regard to its nature and
scope.

8. MASTER AND SERVANT—WHETHER MOVING OF GIN POLE WAS REGU-
LAR OPERATION OR TRANSITORY DETAIL OF WORK BEYOND PALE OF
MASTER'S SUPERVISION HELD FOR JURY.—Whether the moving of a
heavy gin pole, which fell and knocked decedent from a beam which
he was realigning, was a regular operation, or such a transitory de-
tail of the work as was beyond the pale of the master's duty of
supervision, held for the jury.

9. MASTER AND SERVANT—SERVANT DOES NOT ASSUME RISK OF DANGER
FROM BREACH OF MASTER'S NONDELEGABLE DUTY, UNLESS HE CON-
TINUES IN SERVICE WITH KNOWLEDGE OF CONDITION AND APPRECIA-
TION OF DANGER WITHOUT PROMISE BY MASTER TO REMEDY DEFECT.—
The danger of injury caused by any breach of a nondelegable duty
of the master is not a risk assumed by the servant, unless it ap-
pears to the exclusion of any other reasonable inference that he
continued in the service and undertook to perform the work in hand
with full knowledge of the condition and some intelligent apprecia-
tion of the danger without a promise from the master to remedy
the defect.          ·

10. MASTER AND SERVANT—SERVANT'S KNOWLEDGE OF RISK AND INTELLI-
GENT APPRECIATION OF DANGER HELD FOR JURY.—Whether a servant,
knocked off a beam and killed by a falling gin pole, had such knowl-
edge of the insufficiency of the force of men on the pole and the risk

of injury and such intelligent appreciation of the danger as would imply a contract by him to assume the risk, *held* for the jury.

11. MASTER AND SERVANT—WHETHER DANGER WAS APPARENT TO ONE OF ORDINARY SENSE AND PRUDENCE HELD FOR JURY.—Whether dangerous conditions resulting in a servant's death were apparent or such as should have been apparent to one of ordinary sense and prudence, and whether the performance of the work under such conditions would not have been undertaken by a man of ordinary sense and prudence, *held* for the jury.

Before BOWMAN, J., York, 1922. Reversed and remanded.

Action by Sallie J. Kell as administratrix of J. L. Kell, deceased, against The Rock Hill Fertilizer Co. From an order of nonsuit the plaintiff appeals.

*Messrs. J. S. Brice,* and *Dunlap & Dunlap,* for appellant, cite: *Nonsuit should not have been granted:* 98 S. C., 279; 98 S. C., 42; 98 S. C., 476; 97 S. C., 403; 100 S. C., 499; 98 S. C., 111; 112 S. C., 7; 109 S. C., 101; 62 S. C., 130; 101 S. C., 86; 81 S. C., 456; 86 S. C., 242; 95 S. C., 302; 87 S. C., 264; 100 S. C., 389; 98 S. C., 125. *Proximate cause is for jury:* 62 S. C., 130; 94 S. C., 340; 94 S. C., 413; 103 S. C., 5. *Where presumption of negligence is raised cause must go to the jury:* 87 S. C., 176. *Inference of negligence could be drawn:* 86 S. C., 304; 14 Rich., 237; 75 S. C., 334; 76 S. C., 388; 85 S. C., 154. *On motion for non suit testimony must be given construction most favorable to plaintiff:* 85 S. C., 355. *Where susceptible of more than one inference question is for the jury:* 112 S. C., 553; 45 S. C., 504; 72 S. C., 256; 76 S. C., 246. *Master liable for unsafe place to work:* 108 S. E., 190; 101 S. E., 643.

*Messrs. John R. Hart* and *R. B. Herbert,* for respondent, cite: *Servant must use ordinary reason in obeying orders:* 104 S. C., 455. *And must adopt safe way of doing a thing:* 104 S. C., 455. *Fact that pole slipped does not warrant inference of negligence:* 103 S. C., 117. *As-*

*sumption of risk:* 110 S. C., 154; 84 S. C., 287; 72 S. C., 349. *Danger arose during progress of work:* 72 S. C., 241. *Duty to be performed determines status of servant:* 80 S. E., 469. *Risk was assumed:* 93 S. C., 193.

March 2, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

The appeal is from an order of nonsuit based upon the ground that there was "no evidence of any negligence on the part of the defendant, which was the proximate cause" of the alleged wrongful death for which plaintiff sought to recover damages.

The plaintiff's intestate was a carpenter, one of a number of workmen employed by defendant in the erection of a building. It appears that certain upright posts or studding had been put in position, and, on top of these, beams, called "plates," extending from one post to another, were being placed and fastened, at a height of about 20 to 22 feet from the ground. These beams were raised into position by means of a "gin pole," a piece of timber 27 feet long, 9¾ inches wide, and 1¾ inches thick. In use, the gin pole stood in upright or perpendicular position, one end braced on the ground. Near the other end, away from the ground, was attached a pulley, or block and tackle, for hoisting the timbers. Above this block, apparently 4 guy ropes were tied to the gin pole. The gin pole was moved from place to place for the purpose of hoisting timbers and had been moved some 10 or 12 times. In moving it the ends of the guy ropes, fastened to the ground or otherwise secured, were loosed and "from two to three men" generally used on each rope. The intestate, Kell, seems to have been engaged in "landing" or nailing the hoisted beams to the upright posts. One of these beams appears to have been placed out of line, necessitating drawing the nails and re-

nailing it, and "before the next section of the plate could be set in place this gin pole had to be moved in order to set the next section of the plate." "Orders were given by one of the foremen" for the misplaced beam to be realigned, and Kell was on top of this beam, doing this work. "In the meantime this gin pole was being moved for the purpose of setting the next section." All the guy ropes, except one, had been loosed, and the gin pole was leaning against the plate on which Kell was working. There were two men on one rope, one on another, one rope was tied to some studding in the building, and no one had hold of the other rope. The gin pole fell and swiped Kell, the intestate, off the end of the plate.

The plaintiff alleged substantially that Kell's death was caused by the negligence of the defendant (1) in failing to furnish a safe place to work, (2) in failing to furnish a sufficient number of men to perform the work, (3) in ordering the performance of the work in a manner that did not properly safeguard the intestate, (4) and in failing to furnish intestate with competent fellow laborers. The motion for nonsuit was based substantially on the grounds (1) that the evidence adduced failed to establish actionable negligence, and (2) that as a matter of law the evidence made out both the defenses of contributory negligence and of assumption of risk. The nonsuit was granted on the first ground.

The correct application of the familiar general principles of employer's liability to the facts of a given case, particularly one involving the doctorine of fellow servant, is rarely free from difficulty. As an eminent text-writer has said:

"The essence of the problem is to discover some rational basis upon which the theory that the master is under an absolute obligation to use due care in providing and maintaining a safe environment for his servants shall be adjusted to the practical situation which results from the fact

that any delinquency of a servant which actually eventuates in injury to a fellow servant must, in the very nature of the case, operate so as to render the environment of the sufferer unsafe." Labatt, Master and Servant (1st Ed.), § 585.

Having furnished, with due regard to the nature of 1-4 the work, a reasonably safe place, reasonably safe and suitable tools and appliances, an adequate force of competent help, and a reasonably adequate plan or system, including proper rules and regulations, for doing the work, in the first instance, the master's duty thenceforward is to exercise due care to maintain those conditions by providing reasonably adequate supervision. "The most general form in which the limits of a master's obligations are susceptible of being stated is that he is not bound to supervise the merely executive details of the work to be done by his servants." Labatt, § 586. If the danger in the servant's environment which eventuates in his injury is caused by the negligence of a fellow servant in carrying out a detail of the work in a manner attributable to the fellow servant's own delinquency and not to any breach of the master's nondelegable duties, the risk of such injury, implied from the contract of service, is held to have been assumed by the injured servant, and the master is absolved from liability. Hence the accepted test in this jurisdiction, in determining who are fellow servants, "is in the character of the act being performed by the offending servant, whether it was the performance of some duty the master owed to the injured servant, the performance of which duty the master had intrusted to the offending servant." *Brabham v. Tel. Co.*, 71 S. C., 53, 50 S. E., 716; *Martin v. Royster Guano Co.*, 72 S. C., at page 243, 51 S. E., 680. The "detail" limitation of the master's duty was plainly the principle upon which the conclusion in the Brabham Case was reached and is apparently the rational basis of the decisions in *Martin v. Royster Guano Co., supra,* and in

Gibbes Phosphate Co., 92 S. C., 193, 76 S. E., 464, cited by respondent. But no statement of principle or reference to other cases is decisive, or perhaps even greatly serviceable, in solving the concrete question here presented. The ultimate touchstone is practical common sense applied to the facts of the particular case.

That the environment of Kell's work at the time of his injury was dangerous is established by the event.

Was the danger one the master was under no obligation to anticipate or to provide against? His position on the beam and his work of realigning it were rendered dangerous by the unsecured gin pole leaning against the beam. In the light of hindsight, either Kell ought not to have been working on the beam, or the gin pole ought not to have been in that position, unsecured. We think the evidence is susceptible of the inference, among others, that the work of realigning the beam and of moving the gin pole were so closely connected in point of time and place as to form virtually one operation. For that operation, there was evidence tending to establish that an inadequate force of hands was supplied. The work of moving the gin pole appears to have been started, the guy ropes unfastened, and the pole thus unsecured leaned against the plate, without an adequate force to man the guy ropes and to finish the moving. One phase of the master's "absolute duty is that of seeing that the number of persons employed is sufficient to prevent each of them from being exposed to that class of risk which results from an inadequacy of the force available for the work in hand." Labatt (1st Ed.), § 573. If the fall of the gin pole had been caused by the breaking of a defective guy rope, it would scarcely be doubted that such fact would be some evidence of breach of the master's duty. Thus in the case of *Brabham v. Tel. Co., supra,* where the plaintiff was injured as the result of the breaking of a lodged tree which he was assisting in

pulling down with block and tackle under the orders of a foreman by the name of Handberry, the Court said:

. "If Handberry had been intrusted by the defendant company with the duty to supply the block and tackle, and had furnished an unsafe or defective one, that would have been a breach of the master's duty to the servants injured by reason of such defective appliance," etc.

Here the evidence is open to the inference that the fall of the gin pole was due to failure to furnish for the work in hand an adequate supply of men, which it was as much the duty of the master to provide as the guy ropes. In that view of the case the nonsuit was improperly granted.

We do not think that conclusion may be avoided 7, 8 by application of the limitation as to executive details. It is true the danger arose in the progress of the work and in the execution of what was in a sense a mere detail, but such a description would as aptly fit almost any injury to a workman in the erection of a building. An employer engaged in construction work who furnishes a detailed plan, reasonably safe and suitable material, tools, and appliances, and an adequate force of men for the work as a whole, and then hires a competent manager and foreman may not thereafter wash his hands of all responsibility for an injury sustained by a laborer in the progress of the work. The duty of supervision extends to the prevention of such injuries from the carelessness of fellow employees in executing details as might be reasonably anticipated and provided against by proper organization and executive planning and by the adoption of proper methods, rules, and regulations for carrying on the work, considered with due regard to its nature and scope. We think the evidence here is fairly susceptible of the inference that the moving of the heavy gin pole hoisting apparatus from place to place was a regular operation and was not such a transitory detail of the work as was beyond the pale of the master's duty of supervision. If so, the manner of attempting to

move it on the occasion of the injury to plaintiff's intestate without an adequate force of men might reasonably be attributed to the lack of the kind of organization and executive planning and direction it was the master's duty to supply. Whether any such inferences as are suggested in the foregoing discussion should have been drawn by the jury as the triers of the facts is, of course, another matter. But it was, we think, properly a matter for the jury's determination in the light of all the facts and circumstances.

The contention that the evidence established the affirmative defenses of assumption of risk and contributory negligence as conclusions of law cannot be sustained. If the injury was caused by any breach of a nondelegable duty of the master, the danger of such injury was not a risk assumed by the servant, unless it appears to the exclusion of any other reasonable inference that the servant continued in the service and undertook to perform this work in hand with full knowledge of the condition brought about by the master's negligence and with some intelligent appreciation of the danger. The latter conclusion involves the element of such intelligent choice on the servant's part as will support a contractual obligation, and rests upon the proposition that where a servant, whose original contract did not embrace the assumption of a certain risk, nevertheless chooses to remain in the service of the master with full knowledge of that risk and comprehension of the danger to which he is thereby exposed, without a promise on the master's part to remedy the defect, etc., he will be held to have impliedly contracted to assume such additional risk of injury. *Berry v. Dillon Mills (S. C.)*, 113 S. E., 348; *Barnhill v. Cherokee Falls Mfg. Co.*, 112 S. C., 541, 100 S. E., 151. Whether the intestate, Kell, had such knowledge of the insufficiency of force on the gin pole and of the risk of injury created by the conditions under which he was working, and such intelligent appreciation of the danger, as would imply a contract on his part

to assume the risk of injury, is not so conclusively resolved by the evidence as to warrant an affirmative answer to that issue as a matter of law.

Whether the dangerous conditions were apparent, or were such as should have been apparent to a man of ordinary sense and prudence, and whether the performance of the work under such conditions would not have been undertaken by a man of ordinary sense and prudence—the determination of which inquiries is decisive of the issue as to contributory negligence—likewise presents a question which under the evidence in the case at bar was essentially one of fact which should have been submitted to the jury.

The judgment of the Circuit Court is reversed, and the cause remanded for a new trial.

Reversed.

Mr. Chief Justice Gary, and Messrs. Justices Watts and Fraser concur.

Mr. Justice Cothran did not participate.