Mrs. Mary HARDY, as Administratrix of the Estate of Coker Hardy, deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. AC/101.

United States District Court
E. D. South Carolina,
Columbia Division.

Oct. 12, 1960.

Edens, Hammer & Glenn, Columbia, S. C., for plaintiff.

N. Welch Morrisette, Jr., U. S. Atty., George E. Lewis, Asst. U. S. Atty., Columbia, S. C., for defendant.

WYCHE, District Judge (Sitting by Designation).

This action was brought by the plaintiff, Mrs. Mary Hardy, as Administratrix of the Estate of Coker Hardy, deceased, against the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 and 2674 to recover damages for the actionable negligence of employees of the Soil Conservation Service of the United States Department of Agriculture, acting within the scope of their employment in preparing plans and specifications, designing, staking out, surveying and supervising, and performing other activities pertaining to the construction of a dam in Clarendon County, which caused plaintiff's intestate, Coker Hardy, to receive an electric shock.

Workmen's Compensation benefits under the South Carolina Workmen's Compensation Act, Code 1952, § 72–1 et seq., have been paid to the widow of the deceased by the Central Surety and Insurance Corporation as carrier for the employer of plaintiff's intestate. The Central Surety and Insurance Corporation under the South Carolina Workmen's Compensation Act has been subrogated to the claim of the plaintiff against the defendant to the extent of the Workmen's Compensation benefits paid by the Central Surety and Insurance Corporation; and the said Central Surety and Insurance Corporation, as subrogee, has consented on the record to the institution and maintenance of this suit which is brought for its benefit to the extent of the Workmen's Compensation benefits paid by it.

The occurrence happened while the plaintiff's intestate, assisting a government employee in making a survey at the specific instance and request of the government employee, was carrying and using under the supervision and direction of the government employee a surveyor's rod furnished by the government, through which rod a stream of electricity was conducted from an overhead line, causing severe burns and injuries to plaintiff's intestate resulting in his death.

The complaint contains two counts; one a cause of action for death which was brought for the benefit of the surviving widow and five children of plaintiff's intestate, and the other a cause of action for conscious pain and suffering, brought for the benefit of the estate.

The case was tried before me without a jury, and in compliance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above case, as follows:

Findings of Fact

1. During the early part of 1956 one D. T. Epps made application to the Soil Conservation Service of the United States Government to do land clearing and pond building work under the supervision of the Soil Conservation Service.

2. Thereafter, on or about May 14, 1956, D. T. Epps and plaintiff's intestate were engaged to perform work of hauling and piling dirt for the construction of a dam with a 12 foot roadway thereon on the farm land of Berry Brothers in Clarendon County, South Carolina, under the supervision of the Soil Conservation Service in accordance with the plans and specifications prepared by it.

3. This dam was approved by the Soil Conservation Service for construction under the Soil Conservation program whereby the government performs the engineering services on dams which includes selecting of sites, designing, surveying, staking, preparing plans and specifications, supervising of the installation, and checking the work to insure compliance with government plans and specifications. Pursuant to the approval by the government, it undertook to and did engage in the foregoing activities pertaining to the construction of the dam.

4. Prior to the commencement of work by plaintiff's intestate and D. T. Epps, the Soil Conservation Service sent

its employees experienced in engineering practices to the site of the proposed dam to collect engineering data, in order to determine, among other things, how high the dam could be built.

5. When the Soil Conservation Service employees went to the site of the proposed dam to collect the necessary engineering data, there was present and observed by them an overhead power line on the farm land, 27 feet above the surface, running diagonally across the portion of the land where the dam with the 12 foot roadway was to be built.

6. After the government employees collected the engineering data on the site they submitted a written report of this data to the office of the Soil Conservation Service to be used by it for designing and preparing the plans and specifications. This report, however, failed to include the presence of the aforementioned overhead power line which was seen by the employees who collected the engineering data.

7. The Soil Conservation Service knew of the danger of locating a dam under a power line and through its employees knew of the presence of the power line over the land where the dam was to be built. It also knew that where a dam is to be built on land which is under a power line precautions should be taken for the safety of persons working on the dam. Nevertheless, the government failed to take any precautions for the safety of those working on the dam, particularly D. T. Epps and plaintiff's intestate; and the failure of the government to take precautions for the safety of persons on the dam was attributable to the failure and omission of the employees of the Soil Conservation Service who collected engineering data on the site to include in their report submitted to the office of the Soil Conservation Service any information concerning the presence of the overhead power line.

8. Pursuant to the information received by the office of the Soil Conservation Service from its employees who collected the engineering data on the site, the dam was designed and plans and specifications were prepared by the engineers of Soil Conservation Service. The specifications provided that the dam with the roadway thereon be constructed to reach a height of 13.8 feet, thus causing a reduction of the vertical clearance to only 13 feet between the roadway of the dam and the overhead power line, whereas the minimum safety clearance is 18 feet according to the Code of Laws for South Carolina, 1952, Vol. 7, page 819. This resulted in the creation of a hazardous and dangerous condition to those working on the dam when nearing completion.

9. After the dam was designed and the plans and specifications were prepared, the employees of the Soil Conservation Service staked out the dam; and on or about May 14, 1956, the plaintiff's intestate and D. T. Epps, commenced the work of hauling and filling dirt for the dam under the supervision of the Soil Conservation Service and in accordance with its plans and specifications.

10. That on May 21, 1956, when the dam was nearing completion, D. T. Epps requested the Soil Conservation Service to check the elevation of the dam to determine whether the height as required by the government had been reached.

11. This check required survey work to be performed by the employees of the Soil Conservation Service and although such survey required two employees of the government to perform same—one to hold and level the surveyor's rod and the other to sight the level with an instrument on a tripod—the Soil Conservation Service sent only one of its employees to the dam to perform this work because the other employee who should have accompanied him went on leave that day.

12. When the government employee, experienced in engineering, reached the dam D. T. Epps and plaintiff's intestate who were engaged in their work were requested by the government employee to help him in the performance of the government work of making a survey to check the height of the dam. The plaintiff's intestate and D. T. Epps thereupon laid aside the work they were doing and

the government employee then set up a tripod and sight instrument and furnished and handed to plaintiff's intestate or D. T. Epps a surveyor's rod which was 11½ feet in length to be used in making the survey.

13. Plaintiff's intestate then proceeded to carry and use the surveyor's rod under the supervision and direction of the government employee who was using the sight instrument, and after being directed to proceed from stake to stake on the roadway of the dam which was then only 14 feet from the overhead power line, he was directed to proceed to take a level on or at a stake located directly under the overhead power line, and just as he was about to place the rod on the stake, the road either touched or came close to the overhead wire causing a stream of electricity to arc or run directly into the rod which conducted it through to plaintiff's intestate and the ground nearby where D. T. Epps was standing, as the result of which the plaintiff's intestate sustained severe burns and injuries resulting in his death.

14. Plaintiff's intestate had no knowledge of or experience with electricity. D. T. Epps with whom he was working at the time received only a high school education, had no experience with electricity, had no special knowledge of electricity, did not know what are conductors of electricity and had never worked with it.

15. The government was negligent in creating a hazardous condition on the roadway of the dam which it knew or should have known was dangerous to persons, particularly the plaintiff's intestate and D. T. Epps, who were likely to be, and in fact were, on the dam, by designing and specifying the roadway of the dam to be constructed to a height of 14 feet with a resultant clearance of only 13 feet between the roadway and the overhead power line when the government knew or by the exercise of reasonable care should have known before and when it commenced its activities pertaining to the construction of the dam that the power line was 27 feet above the surface of the land and the dam when completed would allow a clearance of only 13 feet between the roadway of the dam and the overhead power line although the minimum safety clearance as required by the Statutes of South Carolina, 1952 Code, page 819, is 18 feet; in failing to take into account the presence of the overhead power line before commencing and while performing its activities pertaining to the construction of the dam; in failing to report the presence of the overhead power line to its personnel who prepared the plans and specifications and who, aware of the danger of locating a dam under a power line, would have taken precautions for the safety of those on the roadway of the dam, particularly for the safety of plaintiff's intestate and D. T. Epps; in failing to take any precautions for the safety of those on the roadway of the dam, particularly for the safety of plaintiff's intestate and D. T. Epps, when the defendant created a hazardous condition thereon, and knew or by the exercise of reasonable care should have known of the hazardous condition resulting from the proximity of the roadway on the dam to the overhead power line; in undertaking to perform and performing work pertaining to the construction of the dam, but failing to properly plan, coordinate and supervise such work; in directing plaintiff's intestate to carry and use a surveyor's rod to perform the government work of making a survey under an overhead power line when it knew or by the exercise of reasonable care should have known that it was dangerous to direct plaintiff's intestate to carry and use the surveyor's rod at the stake which was located directly under the overhead power line only 14 feet above the roadway of the dam; in failing to give plaintiff's intestate or D. T. Epps any warning of the danger of carrying and using a surveyor's rod under the overhead power line; in undertaking to furnish and furnishing plaintiff's intestate with an appliance—a surveyor's rod—for his use in performing the government's work of making a survey although the said appliance was not proper and safe under

the circumstances in that it was 11½ feet long, a conductor of electricity, and was directed by the government to be used under a power line which was only 14 feet above the roadway of the dam.

16. The aforementioned negligent acts and omissions of the government, acting by and through its agents and employees in the course and scope of their duties and employment, constituted the direct, proximate and efficient cause of the occurrence and resulting injuries and death to the plaintiff's intestate.

17. The plaintiff's intestate was not guilty of any negligence.

18. The negligent acts or omissions of the government which constituted the direct, proximate and efficient cause of the occurrence and resulting injuries and death to plaintiff's intestate were committed in the performance of operational details and did not involve the exercise of discretionary functions and duties within the meaning of the provisions of Title 28 U.S.C.A. § 2680(a) that shield the government from liability for tort.

19. The plaintiff's intestate was 38 years of age at the time of his injuries and suffered great pain and mental anguish from the severe burns and injuries sustained by him until his death three days thereafter. At the time of trial the life expectancy of plaintiff's intestate, according to the mortality table, was 27 years. For the year immediately preceding his death he earned approximately $4,000.00 per year and always provided for the support of his wife and family. He left surviving him his widow and five children, one of whom was born shortly after his death. Their ages at the time of trial were 16, 13, 8, 7 and 4 years, respectively. The relationship between plaintiff's intestate and his family was very close and the children were very fond of him. The widow and the surviving children suffered wounded feelings, grief and sorrow as the result of the death of plaintiff's intestate, and the plaintiff's intestate, between the time of his injuries and the date of his death, sustained conscious pain and suffering.

20. The Central Surety and Insurance Corporation is subrogated to the claim of the plaintiff against the defendant herein, and thus, is entitled to be paid from any recovery against the defendant to the extent of the Workmen's Compensation benefits paid by the Central Surety and Insurance Corporation for the death of Coker Hardy, deceased.

### Conclusions of Law

1. This Court has jurisdiction of the parties and the subject matter of this action.

2. It is a fundamental principle of the law of negligence that one who creates a dangerous condition at a place where others are likely to be, and have a right to be, must use due care in guarding against the condition. Hill v. Carolina Power & Light Co., 204 S.C. 83, 28 S.E.2d 545; Joiner v. Fort, 226 S.C. 249, 84 S.E.2d 719.

3. It is the law in South Carolina, as it is elsewhere, that "it is not necessary to show that a person charged with negligence should have foreseen the particular consequence or injury that resulted. It is enough that he should have foreseen that his negligence would probably result in injury of some kind to some one." Glover v. Yonce, 4 Cir., 188 F.2d 870, 874; Tobias v. Carolina Power & Light Co., 190 S.C. 181, 2 S.E.2d 686; Joiner v. Fort, 226 S.C. 249, 84 S.E.2d 719.

4. Where a plaintiff, acting under the direct supervision of a defendant, is directed and induced by such defendant to do an act which exposes the plaintiff to dangers which the plaintiff does not appreciate without any warnings with respect thereto and instructions as to how they could be avoided, the defendant is liable for the injuries to the plaintiff proximately resulting therefrom. 56 C.J.S. Master and Servant § 291, p. 1054; Franklin v. Delgado, 5 Cir., 262 F.2d 439.

5. A person undertaking to perform work is charged with the duty of properly planning, coordinating and su-

pervising the work and if he fails in the performance of such duty he may be held liable for injuries to persons proximately resulting therefrom. Whisenhunt v. Atlantic C. L. R. Co., 195 S.C. 213, 10 S.E. 2d 305; Kell v. Rock Hill Fertilizer Co., 123 S.C. 199, 116 S.E. 97; Hill v. Polar Pantries, 219 S.C. 263, 64 S.E.2d 885, 25 A.L.R.2d 1080.

6. The minimum safety clearance between overhead power lines and roads in urban and rural districts is 18 feet according to the Code of Laws for South Carolina, 1952, Vol. 7, page 819.

7. Title 28 U.S.C.A. § 2680(a) provides:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise of performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

It is well settled, however, that where the wrongful acts and omissions of the government do not involve discretionary functions or duties but involve rather the performance of operational details, the government cannot claim the exemption from liability provided by Title 28 U.S.C.A. § 2680(a). Hatahley v. United States, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065; Somerset Seafood Co. v. United States, 4 Cir., 193 F.2d 631; Eastern Air Lines v. Union Trust Company, 95 U.S.App.D.C. 189, 221 F.2d 62; Pierce v. United States, D.C., 142 F.Supp. 721, affirmed 6 Cir., 235 F.2d 466.

8. In arriving at the damages in an action for wrongful death it is proper to consider the pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, deprivation of the comfort of the intestate's society and the loss of his experience, knowledge and judgment in managing his own affairs and those of his beneficiaries. Greene v. Miller, D.C., 114 F.Supp. 150; Mishoe v. Atlantic C. L. R. Co., 186 S.C. 402, 197 S.E. 97.

9. Applying the foregoing principles of law and statutes to the facts in this case, I conclude that the stream of electricity which struck the plaintiff's intestate, his resulting injuries and death, and the damages to plaintiff as administratrix of the estate of Coker Hardy, deceased, were caused by the negligence of the defendant, acting by and through its agents and employees within the course and scope of their employment.

10. That the negligence of the defendant, by and through its agents, servants and employees, acting within the scope of their employment, was the direct and proximate cause of the stream of electricity coming in contact with the plaintiff's intestate and his resulting injuries and death and damages to the plaintiff as administratrix of the estate of Coker Hardy, deceased, without which they would not have occurred.

11. That the negligent acts and omissions of the government did not involve the performance of discretionary functions and duties on the part of its employees and, consequently, Title 28 U.S.C.A. § 2680(a) is not applicable here to exonerate the government from liability.

For the foregoing reasons it is my opinion that the plaintiff, as administratrix of the estate of Coker Hardy, deceased, for the benefit of the surviving widow and children of the deceased, is entitled to recover judgment against the defendant for damages in the sum of $70,000 and for the benefit of the estate of the deceased the sum of $5,000, aggregating the total amount of $75,000, and that the Central Surety and Insurance Corporation is entitled to be subrogated to the judgment in favor of the plaintiff to the extent of the Workmen's

Compensation benefits paid by it for the death of Coker Hardy, deceased, and

It is so ordered.

It Is Further Ordered, that the attorneys for the plaintiff be and they are hereby authorized to receive as a reasonable attorneys' fee 20 per cent. of the amount of the aforesaid award, to be paid out of but not in addition to the amount of said award.'