CHASE v. SPARTANBURG RY., GAS AND ELECTRIC CO.

1. CHARGE—NEGLIGENCE—APPLIANCES—MASTER AND SERVANT.—Where a complaint charges injury to a plaintiff by reason of (1) a defective belt furnished the servant by the master, and (2) carelessness in servant in fastening the belt, it is error to instruct the jury that they cannot find against the master, if they would not find against the servant for negligently fastening the belt, because master may have been negligent in furnishing defective appliances, or notifying servant of danger, and this is a question of fact. Rule of liability of master or servant discussed.

MR. CHIEF JUSTICE McIVER dissents.

2. REHEARING refused.

Before TOWNSEND, J., Spartanburg, May, 1900. Reversed.

Action by C. C. Chase against Spartanburg Ry., Gas and Electric Co. From judgment for defendant, plaintiff appeals.

*Messrs. O. L. Schumpert, McCravy & Hunt Bros.* and *Stanyarne Wilson,* for appellant.

*Messrs. Duncan & Sanders,* contra.

The opinion in this case was filed April 21, 1902, but remittitur stayed on petition for rehearing until

May 30, 1902. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages on account of injuries received by the appellant, who was struck by a servant of the defendant falling from one of its poles, on the streets of Spartanburg. The complaint alleges two separate and distinct acts of negligence or causes of action: 1. It charges that the defendant furnished its servant a defective, insecure and insufficient belt and tackle to sustain him while suspended over the street and sidewalk, by reason

of which the belt broke, precipitating its servant to the ground, a distance of twenty feet, striking plaintiff and injuring him severely.   2. That the servant carelessly failed to buckle or fasten the ends of the belt, while he was at work on this pole, by reason of which he fell from the pole, striking the plaintiff and injuring him severely.

F. D. Marshall, foreman of the defendant and examined as a witness in its behalf, testified as follows: "Q. Can you account at all for this accident, for his falling?   A. Only in one way: it comes unsnapped.   There is a certain way, if you give it a little wrench, it will come undone.   If you fasten it this way, it will be all right (the hook being fastened on each side with the spring inward).   If you snap one on the outside and one on the inside around the pole, it will be in a crook, and this thing will turn over like that.   Q. How will that unsnap it?   A. I don't know how it does it, but it will come undone there.   Q. That ring sometimes presses against that and throws it out?   A. Very seldom.   I have seen it do it once or twice with one in and one out."

The jury rendered a verdict in favor of the defendant, and the plaintiff has appealed upon the single exception assigning error on the part of his Honor, the presiding Judge, in charging: " 'If, under all the facts of this case, the jury would not render a verdict against M. Clark, if he were being sued on the grounds of negligently fastening the belt, then they should not find a verdict against the defendant on this account;' thereby erroneously declaring that the liability of the employe is the correct standard by which to measure the liability of the employer; and also thereby charging upon the facts, to wit: limiting the cause of the insufficient or insecure fastening of the belt to the personal negligence of the employee (Clark) ; whereas the nature of the constitution of the belt (for which the employee was not responsible) may have conduced to the accident, in spite of the exercise of ordinary care by said employee."

Mr. Jaggard, in his work on Torts, sec. 98, says: "According to Judge Story, 'The agent is also personally liable to

third persons for his own misfeasances and positive wrongs. But he is not in general (for there are exceptions) liable to third persons for his own non-feasances or omissions of duty in course of his employment. His liability in these latter cases is solely to his principal, there being no privity between him and such third persons, but the privity exists only between him and his principal.' The rule comes from the famous saying of Lord Holt, in Lane *v.* Sir R. Colton: 'A servant or deputy cannot be charged with neglect, but the principal only shall be charged for it; but for a misfeasance an action will lie against a servant or deputy, but not as a servant or deputy, but as a wrong-doer.' Blackstone furnishes a favorite illustration: 'If a servant * * * by his negligence does any damage to a stranger, the master shall answer for his neglect. If a smith's servant lames a horse while he is shoeing him, an action lies against the master, not the servant.' But the rule as there laid down has been seriously questioned. * * *" In commenting on the foregoing doctrine, the author continues as follows: "The futility of such reasoning on the word 'nonfeasance' appears fully from the lack of definiteness of the meaning to be given the term. This solemn legal jugglery with words will probably disappear, 'if the nature of the duty incumbent on the servant be considered.' If the servant owe a duty to third persons, derived from instrumentality likely to do harm or otherwise, and he violates that duty, he is responsible. His responsibility rests on his wrong doing, not on the positive or negative character of his conduct. A wrongful omission is as actionable as a wrongful commission. A driver who injures a third person by his negligence is liable." We are satisfied that the rule is correctly stated in this last quotation, and that a servant as well as the master is liable in all cases, when his negligent act is the direct and proximate cause of the injury sustained by a third person. The negligence of the servant must be determined with reference to the duty imposed upon him, while the negligence of the master must be founded upon his failure to

discharge the duty resting upon him. In 14 Enc. of Law, 842-3, it is said: "In performing the duties of his place, a servant is bound to take notice of the ordinary operation of familiar natural laws, and to govern himself accordingly. If he fails to do so, the risk is his own. He is bound to use his eyes to see that which is open and apparent to any person using his eyes, and if he fails to do so, he cannot charge the consequences upon the master. And this rule applies to minor servants. But a servant does not, of course, assume the risk of any dangers arising from unsafe or defective methods, surroundings, machinery or other instrumentalities, unless he has, or may be presumed to have, knowledge or notice thereof." See, also, *Evans* v. *Chamberlain,* 40 S. C., 104; *Hightower* v. *Bamberg Mills,* 48 S. C., 190, and *Teaford* v. *Electric Co.,* 54 L. R. A. (Cal.), 85. It is thus shown that the negligence of a servant in handling the instrumentalities incident to his employment, depends upon whether they are apparently likely to produce injury, and if the danger is only latent, whether he has knowledge of the danger attendant upon the use of them. These are questions of fact ordinarily to be determined by the jury. If, in this case, the jury should reach the conclusion that the fastening of the belt was attended with latent danger, of which the servant had no knowledge, they could not say from these facts that he was negligent, as he had the right to assume that the master would advise him of such danger. But as the law imputes to the master the knowledge of the danger, even though latent, in the use of the instrumentalities with which he provides his servant, he cannot escape liability by showing he was ignorant of this fact, unless he should further show that by the use of due diligence he could not have discovered the danger. The jury will, therefore, in deciding whether the master was negligent, take into consideration the fact that he had knowledge of the danger in the eyes of the law, and it is incumbent on the master, by way of defense, to show that he could not by the use of due diligence have had knowledge of the danger. It will

thus be seen that different elements enter into the question of negligence on the part of the master and on the part of the servant.  We do not mean to say that there are not cases in which the liability of the master and servant might depend upon the same state of facts, but that in the case under consideration this Court cannot say, as matter of law, that if the jury would not render a verdict against the servant, if he were being sued on the ground of negligently fastening the belt, then they should not find a verdict against the defendant on this account.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the case remanded for a new trial.

MR. CHIEF JUSTICE MCIVER *dissents.*

The petition for rehearing was dismissed May 30, 1902, by following *per curiam* order:

On examination of this petition, it fails to satisfy us that any material fact or principle of law has either been overlooked or disregarded—hence there is no ground for a rehearing.

It is, therefore, ordered, that the petition be dismissed, and that the stay of remittitur heretofore granted be revoked.