## 11009

### HOWELL v. UNION-BUFFALO MILLS CO.

#### (113 S. E. 577)

1. MASTER AND SERVANT—USE OF DEFECTIVE INSTRUMENT BY FELLOW SERVANT HELD NOT INTERVENING CAUSE OF INJURY.—Where plaintiff's fellow servants, as part of their joint task of oiling shell rollers, fortuitously, but not in an unusual manner, placed a broken shell in such a position that oil ejected through the break struck plaintiff's eye, his fellow servant's act was not an intervening cause, superseding the alleged defective condition of the shell and of the oil as the proximate cause of the injury.

2. NEGLIGENCE—DOCTRINE OF INTERVENING CAUSE STATED.—The mere fact that the intervention of a responsible human being can be traced between defendant's wrongful act and the injury complained of will not absolve defendant.

3. NEGLIGENCE—WRONGDOER LIABLE FOR PROBABLE CONSEQUENCES OF ACT.—A wrongdoer must generally answer for proximate and natural consequences, not controlled by the unforeseen agency of a moral being capable of discretion and left free to choose, or by some unconnected cause of greater influence, however small was the probability of their occurrence.

4. MASTER AND SERVANT—CAUSE OF INJURY TO EYE BY OIL HELD FOR JURY.—In an action for injury to an oiler's eye, struck by oil ejected from a broken shell roller, when a gap in the shell was turned in the direction of his eye by his assistant, *held,* that the question as to whether his eye was injured by being negligently subjected to an injection of good oil as a result of the defect in the shell was for the jury.

5. MASTER AND SERVANT—ASSUMPTION OF RISK AND CONTRIBUTORY NEGLIGENCE IN OILING DEFECTIVE SHELL ROLLER HELD FOR JURY.— In an action for injury to an oiler's eye, struck by oil ejected from a defective shell roller when a gap in the shell was turned in the direction of his eye by his assistant, whether the defect was so obvious as to bar recovery under the law as to assumption of risk and contributory negligence *held* a question for the jury.

Before WILSON, J., Union, September, 1921.    Affirmed.

Action by Miles Howell against Union-Buffalo Mills Co. Judgment for plaintiff and defendant appeals.

*Messrs. Elliott & McLain,* for appellant, cite: *Proximate cause:* 108 S. C., 523; 32 S. C. L., 525. *Assump-*

*tion of risk even with Master's negligence*: 111 S. C., 387; 102 S. C., 402. *Servant must adopt safe way to do work*: 104 S. C., 451.

*Mr. John K. Hamblin,* for respondent, cites: *Servant may recover for combined negligence of Master and fellow servant*: 91 S. C., 127; 89 S. C., 525; 84 S. C., 283; 82 S. C., 360; 111 S. C., 433; 112 S. C., 177. *Assumption of risk*: 86 S. C., 69; 66 S. C., 482; 55 S. C., 101. *No assumption of risk where Master has promised to remedy defect*: 53 S. C., 363; 61 S. C., 478; 75 S. C., 390; 94 S. C., 154; 102 S. C., 281; 110 S. C., 154. *Latent defect*: 72 S. C., 423.

September 1, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

In action for damages on account of personal injury, defendant appeals from judgment on verdict for plaintiff. The exceptions assign error in the refusal of defendant's motion for a directed verdict.

The plaintiff was in the employ of the defendant as an oiler of cotton-mill machinery. He alleged—and there was some testimony to support the allegation—that the sight of one eye had been practically destroyed as the result of contact of his eye with certain oil which he was using to oil leather-covered rolls on a spinning frame.

"These rolls are in two parts, one called a shell or mantel, which is a hollow metal cylinder covered with leather, and the other a solid cylinder of steel, called an arbor, which fits snugly into the hollow cylinder. In oiling these shell rollers, two men are used. One lifts the shell roller off the machine; the other pulls the arbor out and oils it after it is wiped off; then the oiler hands the arbor back to his fellow servant, who replaces the mantel or shell, and places the complete roller back on the machine. There are 200

or 300 shell rollers on each spinning frame.    When a machine is in operation, the arbor remains stationary, and the shell or mantel revolves on it, much as a wheel on an axle."

In this case it is claimed that the plaintiff had oiled an arbor and handed it back to his fellow servant, Martin; that Martin then pushed the mantel down over the arbor; and that in the course of that operation oil spurted out, from a point where a small piece of the metal end of the mantel had been broken off, and struck plaintiff in the eye.

The complaint alleged substantially a breach of the master's duty in (1) failing to furnish plaintiff with safe and suitable machinery and instrumentalities with which to work, (a) in that the shell was broken and defective, and (b) in that the oil was so thick it would easily come in concentrated amount from the roller; and (2) in failing to warn plaintiff of the danger of injury, of which he was ignorant.    The defendant by its answer denied the allegations of the complaint and pleaded contributory negligence and assumption of risk.

The first three exceptions are grouped by appellant's counsel under a discussion of the proposition that there was no proof of any negligence which could conceivably have been the proximate cause of the alleged injury.    There was testimony tending to establish that the shell, which went on the roller plaintiff had just oiled, was broken; that, if the shell had not been broken, the "oil would have stayed in"— "wouldn't have squirted out"; that the oil was "thick," had "black dregs" in it, and was a different kind of oil from that in use before this occasion; that it was "old white oil and had a lot of trash and lint in it"; that shortly before the injury occurred plaintiff had complained to his immediate superior, the second hand, that the oil was unsuitable for oiling purposes; that he was told to go ahead, that it was all right, and that they "would have to wait until morning" before they could get any oil; that plaintiff had received

10—S. C.—121

no warning or instruction as to the shell being broken. The testimony of the character indicated unquestionably tended to establish defective condition of the shell and of the oil for certain purposes.

But, conceding that, appellant contends there was no testimony to support an inference that the injury was proximately caused by the defective condition of the shell, or of the oil, or by the lack of warning. Assuming those conditions to exist, it is argued, "there was an intervening cause, to wit, the manner of placing the shell on the arbor," so as to squirt oil in the plaintiff's eye, which was in contemplation of law the proximate cause of the injury. The shell was placed by the plaintiff's assistant, Martin, in the performance of his duty to the master. It is not contended, as we understand the argument, that the manner of slipping on the shell was in any wise peculiar or unusual. The contention is that the act of Martin in putting the shell on, in a manner that fortuitously placed the break in such position that oil ejected therefrom would strike plaintiff's eye, was such an independent, intervening cause, as superseded the alleged defective condition of the shell, and of the oil as the responsible proximate cause.

We think the appellant's contention is clearly untenable.

1, 2

"It is universally agreed that the mere fact that the intervention of a responsible human being can be traced between the defendant's wrongful act and the injury complained of will not absolve him." 22 R. C. L., p. 134.

The putting on of the broken shell by plaintiff's assistant was a part of the performance of the joint task of oiling the rollers, and was as natural and probable a sequence in the succession of events as if the shell had been put on by the plaintiff himself. Between the defective instrumentality and the injury must always intervene the act of using the instrumentality. Obviously, if the instrumentalities are

used in the service of the master in the usual and ordinary way, it can make no difference whether they were actually used by the injured servant or by another; the act of so using cannot be a new and independent cause intervening between the wrong and the injury. The force of appellant's contention would seem to lie in the postulate, implied, but not clearly advanced, in the exceptions as formulated, that the injury, occurring as the consequence of the fortuitous circumstance that the gap in the shell was turned in the direction of plaintiff's eye, was not such a natural and probable consequence of the alleged defects as would charge the defendant with liability for actionable negligence.

Even in that aspect, however, we have no doubt that the issue was properly submitted to the jury under the well-settled rule, thus admirably stated by our Court many years ago in *Harrison v. Berkley,* 1 Strob., 525, 47 Am. Dec. 578:

"For proximate and natural consequences, not controlled by the unforeseen agency of a moral being, capable of discretion and left free to choose, or by some unconnected cause of greater influence, a wrongdoer must generally answer, however small was the probability of their occurrence."

Appellant's fifth and sixth exceptions relate primarily to the master's duty with respect to the alleged contaminated condition and deleterious effects of the oil, and are logically disposed of by what has just been said. The contention made is that the defendant, as master, was under no obligation to furnish plaintiff with lubricating oil that was suitable for the purposes of an eye wash. There was some testimony tending to establish that the oil was not even suitable for lubricating the machinery. But the suggestion that the master owed no duty to keep the oil free from matter harmful to the human eye rests upon the assumption that the oil was not intended for contact

with the eye of the oiler, and on the motion to direct a verdict the question would still remain as to whether plaintiff's eye was actually injured by being negligently subjected to an injection of perfectly good machine oil as the result of the defect in the shell. In any view, we think the verdict could not properly have been directed upon the ground suggested.

In the argument, directed to a consideration of the fourth exception, appellant contends that the motion should have been granted upon the ground that the defect in the shell was obvious, and that it was used in an obviously unsafe, when a safe, way was open. The verdict, of course, could not have been directed upon that ground, unless the undisputed facts were of a character to warrant the trial Judge in holding as a matter of law that the plaintiff had assumed the risk of injury, or that he had proximately caused the injury by his own contributory negligence. The basic fact upon which this contention is predicated, viz.: the obvious character of the defect, was itself in dispute. The plaintiff and his assistant both testified that inspection of the rollers was not in the line of their duty, and that they did not see the broken place in the shell prior to the injury. Whether the alleged defect was so obvious as to bar recovery under the law as to assumption of risk and contributory negligence, or so trivial and obscure as to absolve the master from legal fault in not discovering and correcting it, were plainly questions for the jury under appropriate instructions of the Court.

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.