15140

WHISENHUNT v. ATLANTIC COAST LINE R. CO.

(10 S. E. (2d), 305)

214

216

October 1939.

*Messrs. Hagood, Rivers & Young* for appellant,

*Messrs. H. L. Erckmann* and *Stoney, Crosland & Pritchard* for respondent,

August 9, 1940.

The opinion of the Court was delivered by MR. J. STROM THURMOND, ACTING ASSOCIATE JUSTICE.

This is an action for $50,000 for personal injuries sustained by the plaintiff on April 24, 1936, and was commenced by service of the summons and complaint on July 19, 1938.

The complaint alleges that the defendant is a corporation created under the laws of the State of Virginia and operates

a railroad through the county of Charleston where it has offices and agents to transact business.

That plaintiff was a man about forty years of age and was employed by defendant as a blacksmith at a salary of approximately $1,700 per annum.

That on the date he was injured he was ordered to repair the running board on top of a freight car of defendant in its yard at Charleston, S. C. That he got on top of the car and, in order to get to the running board of same, had to walk over a plank known as an extension leading from the end of the top of the car to the said running board.

That plaintiff and his helper had been working there for some time, and while he was engaged in repairing a saddle of said running board about the middle of the top of said car one J. E. Bunch, an engine carpenter, and his helper, P. A. Antley, employees of defendant, without any notice or warning to plaintiff, came on top of said car and removed the extension board and placed in its stead a new extension board, and failed to fasten same securely, although they knew it was there as a walkway to and from the top of the car.

That after the lapse of about fifteen minutes a whistle blew to discontinue work for the day and plaintiff gathered his tools and proceeded to leave the top of the train by the same way as he came. In so doing, he had to pass Antley, who was on top of the car, and told him he was leaving. That neither Bunch nor his helper (Antley) told him they had failed to fasten the extension board and plaintiff, believing it to be secure, stepped on same to go down from top of the car, and the said extension board not being fastened, began to slip and give way, causing plaintiff to jump from the top of the car to prevent his being thrown down, and he was seriously and permanently injured. His right heel was fractured and left heel crushed, and he is unable to perform his accustomed work or any kind of work which requires him to stand on his feet or to perform work sufficient to earn a livelihood for himself and family.

The complaint sets out that the said injury to the plaintiff was proximately caused by defendant and was a direct result of the willful, reckless and negligence conduct of the defendant in the following particulars:

(a) In failing to provide for plaintiff a safe place to work and a safe place to walk in order to leave said box car upon the completion of his working day.

(b) In ordering the performance by said J. E. Bunch and his helper, of a different piece of work on the same freight car, in a manner that did not properly safeguard the rights of plaintiff and in ordering said J. E. Bunch and his helper to do work on the same car without notice to plaintiff and without warning him as to the nature of the work done and to be done.

(c) In sending an engine carpenter and helper to repair the extension on said box car and in failing to employ competent workers to do said job.

(d) In removing the running board from said box car and in placing in its stead a new one without securely fastening same when it knew that said running board was there as a walkway to and from the top of the car.

(e) In failing to warn plaintiff that said running board was not securely fastened.

(f) In allowing plaintiff to step on said running board without warning him that same was not securely fastened.

(g) In failing to anticipate or provide against the danger of injury to plaintiff from the repair of said running board and in failing to supervise said work properly.

That plaintiff suffered great and grievous bodily pain and mental anguish. He was confined to the hospital for twelve days, had his feet in casts and stayed in bed for six weeks, had to use crutches for several months and afterwards supported himself with a stick, and is permanently injured and unable to stand on his feet for any length of time or keep his equilibrium or do any work.

The answer of the defendant admits the corporate capacity of defendant, and so forth.

Admits that on April 24, 1936, plaintiff was about forty years of age and was employed by it as a blacksmith at a salary of approximately $1,700.00, but says that plaintiff was liable to have his salary reduced or not to be employed continuously. It admits that plaintiff was ordered by defendant to repair the running board in question and that he had to get on top of the car and walk over the extension in question to get to the running board. It says that Bunch and Antley were directed to go and aid the plaintiff in completing his job, and that plaintiff knew that their work was to put on a new extension board, and denies that they willfully, carelessly and incompetently failed to fasten same securely, and that if the same was not fastened securely that plaintiff knew or with slightest care for his own safety could have seen and known that the extension board was not securely fastened.

It admits that when the whistle blew plaintiff proceeded to leave the top of the car. It denies that Antley was on top of the car at the time and says that plaintiff should have known and could have seen that said extension board was not securely fastened. That had he gone to the other end of car where the extension board had not been removed he had a perfectly safe way to leave the said car, and if he was hurt it was due entirely to his own recklessness and carelessness in not taking care of his safety. It denies the extent of his injuries. It denies the specifications of willfulness and negligence and the damages alleged in the complaint.

The defendant pleads contributory negligence and alleges that the willfulness and negligence of the plaintiff consisted:

(a) In not looking to see if the new extension board had been fastened before he stepped thereon or attempted to use it, the said plaintiff at the time well knowing that the said extension board was in process of renewal.

(b) In not taking a suitable and safe way to leave the car by going to the opposite end of the car from the end he chose and where the extension board was fastened and was

not being repaired, and which was the safe and proper end of the car.

The answer further alleges that since this action was not commenced within two years from date that plaintiff's supposed cause of action accrued and is barred under Section 8370 of Code of South Carolina. It further alleges that plaintiff was experienced and knew or should have known the risk and that he assumed same.

The answer further alleges that if the plaintiff were injured at the time and place as set forth in the complaint such injury was the result of the negligence of his fellow servants, J. E. Bunch and P. A. Antley, who were engaged in the same department of labor as the plaintiff.

The case was tried before his Honor, Judge C. C. Featherstone, and a jury, on October 31, 1939, and resulted in a verdict for the plaintiff of $20,000.00 actual damages, the presiding judge having charged the jury that they could not find punitive damages. On motion for a new trial this amount by order nisi was reduced to $15,000.00.

During the trial defendant moved for a nonsuit at the close of the plaintiff's case, and at the end of all testimony made a motion for a directed verdict in its favor, both motions being refused. The defendant has appealed to this Court upon two exceptions, both involving the refusal of the trial judge to grant a nonsuit and directed verdict on the grounds of fellow servant and contributory negligence. No other questions are before this Court.

At the trial of the case the respondent offered evidence to sustain the allegations of the complaint, and the appellant offered evidence tending to establish its defenses, but its own witnesses testified that the master (appellant) had furnished defective appliances and equipment, namely, an extension board with holes so out of line that the bolts which were out of line could not and did not fit, and that had the holes in the extension board been in line everything would have been all right and that this was the trouble.

The Statute of Limitations defense as set out in Section 8370 of 1932 Code of South Carolina was plead by appellant in its answer but the said section is not applicable to this type of action. Appellant evidently reached such conclusion as it did not press this defense or attempt to avail itself of same.

The appellant also plead assumption of risk, but it admits in the transcript that it abandoned this defense. The doctrine of assumption of risk rests upon contract, and contributory negligence rests in tort. *Montgomery v. Seaboard Air Line Railway*, 73 S. C., 503, 507, 53 S. E., 987. Assumption of risk and contributory negligence are so closely allied though that it is difficult at times to draw the true line of distinction between them. *Hall v. Northwestern R. Co.*, 81 S. C. 522, 525, 62 S. E. 848. In a broad sense, assumption of risk shades into contributory negligence, the difference being one of degree rather than kind. *Stogner v. Great Atlantic & Pactific Tea Co.*, 184 S. C. 406, 192 S. E. 406.

In his brief, counsel for appellant states that the exceptions raise only two questions, to wit:

(1) That the injuries to the plaintiff (respondent) were caused by the negligence of his fellow servants.

(2) That he himself was negligent and his negligence contributed to his injuries as a proximate cause thereof; and on each ground the presiding Judge should have directed a verdict for the defendant.

Question 1: *Were the injuries to respondent caused by the negligence of fellow servants?*

The first portion of Article 9, Section 15, of our 1895 Constitution, reads: "Every employee of any railroad corporation shall have the same rights and remedies for any injury suffered by him from the acts or omissions of said corporations or its employees as are allowed by law to other persons not employees, when the injury results from the negligence of a superior agent or

officer, or of a person having a right to control or direct the services of a party injured, and also when the injury results from the negligence of a fellow servant engaged in another department of labor from that of the party injured, of a fellow servant on another train of cars, or one engaged about a different piece of work."

The above constitutional provision is self-executing since no legislation is necessary to give effect to it. 6 R. C. L., 57.

In *Rutherford v. Southern Railway Co.*, 56 S. C. 446, 455, 35 S. E. 136, 139, this Court construed this Section of the Constitution in the following language: "It seems to us that the true construction of the constitutional provision above referred to is this: While it does not entirely deprive a railroad company, in a case like the present, from availing itself of the previously well recognized defense that the injury complained of was the result of the negligence of a fellow servant, for which the company is not responsible, yet it does confine such defense within narrower limits than had been previously recognized; for it will be observed that the provision in question sets out with the declaration that every employee of a railroad company shall have the same rights and remedies for any injury sustained by him from the acts or omissions of such company 'or its employees' whether fellow servants or not, as are allowed to a person who is not an employee of such company; and, if the section had stopped at that point, then the effect, manifestly, would have been to entirely deprive a railroad company of the right to set up as a defense to an action like this that the injury complained of resulted from negligence of a fellow servant of the plaintiff, for which the company was not responsible. But the section does not stop at the point indicated, and, on the contrary, goes on to show in what cases an employee shall have the same rights and remedies as a person not an employee, as follows: (1) Where the injury results from the negligence of a superior officer or agent; (2) where it results from the negligence of a person having a right to control or direct the services of

the party injured; (3) when it results from the negligence of a fellow servant engaged in another department of labor, or on another train of cars, or one engaged in a different piece of work. So that, in all other cases not falling under either of the classes above indicated, the law upon the subject of the defense of fellow servant remains the same as it was before."

It will be observed that the constitutional provision referred to, and the above case so construes it, withdraws from any railroad corporation the defense of fellow servant "when the injury results from the negligence of a fellow servant engaged in another department of labor from that of the party injured, or a fellow servant on another train of cars, or one engaged about *a different piece of work.*" (Italics added.) The testimony shows that respondent was not engaged in the same piece of work with Bunch and Antley. The respondent was engaged in repairing a certain box car. Appellant's witness, Bunch, testified it was "Whisenhunt's car," conceding that he and Antley, his helper, were on another job and engaged about a different piece of work. Respondent was in the middle of the car working on a running board saddle when Bunch and Antley came over from the car which they had been repairing. The following testimony by respondent on direct examination is pertinent at this point:

"Q. You were not engaged in the same piece of work? A. No, sir."

When Bunch and Antley got on respondent's car and inspected the running board extension, Antley said Bunch told him, "We will take this for our job." It is plain that respondent was not engaged in the same piece of work with Bunch and Antley, and it was proper to submit the case to the jury on this ground. *Hill v. Broad River Power Company,* 151 S. C., 280, 148 S. E., 870.

In *Price v. American Agricultural Chemical Company et al.,* 173 S. C., 518, 176 S. E., 352, 355, the clear language of this Court indicates who are fellow

servants: "In determining who are fellow servants, the test or rule in this state is not whether the servants are of different grade, rank, or authority, one of them having power to control and direct the services of another, but the test is in the character of the act being performed by the offending servant, whether it was the performance of some duty the master owed to the injured servant, the performance of which duty the master had intrusted to the offending servant."

"The question as to who are fellow servants is a mixed question of law and fact. It is for the court to define the relation of fellow servants, but it is for the jury to determine whether the employees in a particular case come within the definition." *Rippy v. Southern Railway,* 80 S. C., 539, 546, 61 S. E., 1010, 1012, 21 L. R. A. (N. S.), 601.

"Whether an engineer, brakeman, or switchman is, when exercising his ordinary duties, a fellow servant with a car cleaner is a question of law. But whether, in a particular case, either of them was engaged in performing certain acts which the law requires of the master, and which would prevent them from being fellow servants, is a question of fact, to be determined by the jury." *Wilson v. Charleston & S. Railway Co.,* 51 S. C., 79, 96, 28 S. E., 91, 97.

The testimony is convincing that Bunch and Antley were not fellow servants of respondent but were representatives of the master, and the appellant *master owed the respondent the duty to provide a reasonably safe place for him to work and to go to and from his work.* Respondent was injured on the running board extension leading from top of car to the side, and this was the usual method of leaving a car from the top. The evidence shows that the running board was unsafe by reason of failure of Antley to fasten it down. The master failed to provide a safe place to work. Antley, the master's representative, on redirect examination, admitted fault. Let the testimony speak:

"Q. It just wasn't fastened? A. Yes, sir.

"Q. You are the person who didn't fasten it? A. Yes, sir.

"Q. Was that normal, proper extension board? A. Yes, sir.

"Q. It was your fault that it wasn't fastened? A. My fault that it wasn't fastened." '

"The law is so well settled in this state that it is unnecessary to quote authority that it is the duty of the master to furnish the servant with a reasonable, suitable, and safe place to work and keep the same in reasonably safe and suitable repair, and furnish the servant with reasonably safe and suitable machinery and appliances to do the work with, and keep the same in reasonably safe and suitable repair, and this duty of the master is nonassignable." *Lester v. Carolina, C. & O. Railway,* 93 S. C. 395, 396, 76 S. E. 976.

"A master is liable for injuries to his servant resulting from defects in the place of work of which he would have known had he exercised due diligence, as well as from those of which he actually did know." *Cutter v. Mallard Lumber Company,* 99 S. C., 231, 232, 83 S. E. 595, 596.

"Where an injury is shown to have resulted from an unsafe place to work, a prima facie case of negligence is made out against the master, and he has the burden of exculpating himself." *Bunch et al. v. American Cigar Company,* 126 S. C. 324, 119 S. E. 828.

*Nuckolls v. Great Atlantic & Pacific Tea Company,* 192 S. C. 156, 161, 5 S. E. 2d 862, 864, holds: "It is the duty of the master to furnish the servant a reasonably safe place to work and reasonably safe and suitable tools and appliances. These duties are positive, absolute and personal. They are termed non-delegable duties, and the master cannot evade liability by delegating their performance to another. And if they are delegated, the agent to whom their performance is entrusted, whoever he may be, and notwithstanding he may be a fellow-servant in other respects, is a vice principal or representative of the master. In other words, he is the master's alter ego (second self), whose

negligence is that of the master and for which the master is answerable where a third person, whether an employee or a stranger, is injured thereby, where the injured person has not been negligent, and has not assumed the risk."

Respondent had reason to believe that the board was sound and had been securely fastened. Although Antley neglected to bolt the board and left it unsafe, he failed to warn respondent when respondent started to get off car, and this was evidence of negligence of the master. *Steele v. Atlantic Coast Line Railway Company*, 103, S. C., 102, 112, 87 S. E., 639; *Turbeville v. Avery Lumber Company*, 155 S. C., 202, 152 S. E., 439.

Whether Bunch and Antley were acting in the capacity of fellow servants with respondent or acting in the capacity of representatives of the master at the time respondent received his injuries, presented a question for determination by the jury, and the trial Judge was correct in pursuing such course. *Boling v. Woodside Cotton Mills*, 171 S. C., 34, 44, 171 S. E., 9; *Rippy v. Southern Railway*, 80 S. C., 539, 545, 61 S. E., 1010, 21 L. R. A. (N. S.), 601.

The testimony shows that when Bunch and Antley went on respondent's car they did not report to him or advise him what they were going to do. They removed the extension board and replaced it after respondent had inspected it and pronounced it safe. *It is the duty of a master to properly plan, coordinate and supervise the work,* and a servant has reason to anticipate that this will be done. Respondent contends that if there had been proper organization, he would not have been injured.

"The master's duty of supervision extends to the prevention of such injuries from the carelessness of fellow employees in executing details of the work as might be reasonably anticipated and provided against by proper organization and executive planning and by the adoption of proper methods, rules, and regulations for carrying on the work, considered with due regard to its nature and scope."

*Kell v. Rock Hill Fertilizer Company,* 123 S. C. 199, 200, 116 S. E. 97, 98.

"The master having furnished reasonably safe place and appliances, and adequate force of competent help, and a reasonably adequate plan and rules, must exercise due care to maintain such conditions by providing reasonably adequate supervision." *Kell v. Rock Hill Fertilizer Company, supra.*

"It was the duty of the defendant to furnish to the plaintiff a reasonably safe place for the plaintiff to do the work for which he was employed, to furnish a reasonably safe instrumentality, method, and means for doing the work, and to supervise the work properly, and under our view of the case, in connection with the testimony adduced at the trial a question for the jury was presented as to whether these duties were performed by the master, and if not performed, whether the failure resulted in injury to the plaintiff as a proximate cause thereof." *Boling v. Woodside Cotton Mills,* 171 S. C., 34, 44, 171 S. E., 9, 13.

The testimony shows that appellant failed to provide a proper running board extension. A *master is obligated to furnish reasonably safe appliances to be used by servants in their work.* The holes of the new extension board furnished by appellant were out of line, making the equipment defective. Antley had plenty of time to fasten the extension board if it had not been defective, and the reason it had not been fastened was the failure of the master to provide a proper board.

On re-cross examination, Antley testified as follows:

"Q. If the extension board had fitted that hole, everything would have been all right? A. Yes, sir.

"Q. The extension board is part of the equipment? A. Yes, sir.

"Q. The holes were not in line? A. No, sir.

"Q. That was the trouble? A. Yes, sir."

"Master is under duty to furnish servant with reasonably safe place to work and safe appliances with which to

do the work." *McGuire v. Steinberg et al.,* 185 S. C., 97, 193 S. E., 205.

"The master's liability for injuries to a servant arising from defects in the place for work, or in the machinery or appliances, is dependent upon his knowledge, actual or constructive, of such defects. If he knew or should have known, by the exercise of reasonable care and diligence, of their existence, he is liable,·negligent ignorance being equivalent to knowledge, * * *." 39 C. J., 430.

"The exercise of due care and diligence in ascertaining whether machinery or other appliances furnished an employee to work with, are kept in proper repair, is the duty of the master and not of the servant." *Lasure v. Graniteville Mfg. Company,* 18 S. C., 275.

"That it was the duty of the master to see to it that its appliances and instrumentalities were in proper condition, and that the plaintiff, by showing that they were not, made a prima facie case against the defendant." *Lester v. Carolina, C. & O. Railway,* 93 S. C., 395, 397, 76 S. E., 976; *Trimmier v. Atlantic & C. A. L. Railway,* 81 S. C., 203, 62 S. E., 209.

"Servant may assume without inquiry or examination that appliances furnished by master are safe and suitable."· *Hopkins v. Southern Cotton Oil Company;* 144 S. C., 395, 142 S. E., 615, 616.

"These are questions of fact ordinarily to be determined by the jury. If in this case the jury should reach the conclusion that the fastening of the belt was attended with latent danger, of which the servant had no knowledge, they could not say from these facts that he was negligent, as he had the right to assume that the master would advise him of such danger. But as the law imputes to the master the knowledge of the danger, even though latent, in the use of the instrumentalities with which he provides his servant, he cannot escape liability by showing he was ignorant of this fact, unless he should further show that by the use of due diligence he could not have discovered the danger. The

jury will, therefore, in deciding whether the master was negligent, take into consideration the fact that he had knowledge of the danger, in the eyes of the law, and it is incumbent on the master, by way of defense, to show that he could not, by the use of due diligence, have had knowledge of the danger." *Chase v. Spartanburg Railway, Gas & Electric Company,* 64, S. C., 212, 215, 41 S. E. 899, 900.

It was for the jury to say whether the injury resulted from a defective appliance negligently furnished by the master or from the negligent use of a proper appliance by a fellow servant. *Koon v. Southern Railway Co.,* 69 S. C., 101, 108, 48 S. E., 86.

A servant cannot recover for an injury caused by the sole negligence of a fellow servant, or the combined negligence of himself and a fellow servant, but it is well settled in this State that the servant may recover for an injury caused by the combined negligence of the master and a fellow servant. *Pinckney v. Atlantic Coast Line Railroad Company,* 92 S. C., 528, 560, 75 S. E., 964. An action would not be defeated on the ground that the negligence of a fellow servant was one of the proximate causes of the injury, if that negligence was combined with the negligence of the master as another proximate cause. *Watson v. Atlantic Coast Line Railway Company,* 91 S. C. 127, 129, 74 S. E. 121. In order for a master to escape liability on the ground of negligence of a fellow servant, it must appear that the master was not negligent at all as to any of the proximate causes of a plaintiff's injury. *Pinckney v. Atlantic Coast Line Railway Company, supra.*

There is testimony in the case to the effect that the appellant failed to furnish respondent a reasonably safe place to work, failed to provide proper organization and supervision for its employees and failed to furnish reasonably safe and suitable equipment (furnished defective extension board) and that one or more of these delicts constituted negligence which was, at least, one of the proximate causes of respondent's injury. If the master was guilty

of negligence in such manner, under the principle of law set out in the Watson and Pinckney cases, supra, the appellant could not avail itself of the fellow servant rule in this case, even if it should be admitted (which is not the case) that Bunch and Antley were fellow servants of respondent, at the time of his injury, and that the negligence of either or both of them was one of the proximate causes of respondent's injury.

Under the facts of this case the question of fellow servant is undoubtedly one for the jury. *Nance v. Swift & Co.* 180 S. C. 470, 186 S. E. 389.

Appellant cites several cases in its brief to support its contention that the injuries to respondent were caused by the negligence of fellow servants, and these will now be considered seriatim. The first is *Murray v. South Carolina Railroad Company,* 1 McMul. 385, 36 Am. Dec. 268. This case, which was decided in 1841, is the earliest case announcing the doctrine that one servant cannot recover for injury suffered by reason of the negligence of a fellow servant. Here though a fellow servant was not the respresentative of the master and the "master himself was not in fault". It is not pertinent to the case at bar.

*Wilson v. Charleston & S. Railway Co.,* 51 S. C. 79, 28 S. E. 91. This case is not in conflict with the principles of law declared in other cases in this opinion. It did not involve nonsuit or directed verdict and was sent back for new trial.

*McDaniel v. Charleston & W. Car. Railway Company,* 70 S. C., 95, 49 S. E., 2, 3. Appellant cited this case to show that respondent was engaged in the "same piece of work" with Bunch and Antley. There the piece of work, or common enterprise, was the removal of a wreck. Also, the plaintiff, conductor and engineer had agreed voluntarily the part each should remove and the accident occurred while they were working, pursuant to such agreement, in the common enterprise. The facts of this case are different.

*Rutherford v. Southern Railway Co.,* 56 S. C., 446, 35 S. E., 136. In this case the Court held that one Walker, though a fellow servant, was acting for the master. The verdict for plaintiff was upheld.

*Kell v. Rock Hill Fertilizer Company,* 123 S. C., 199, 116 S. E., 97. Quotations from this case are to be found in the opinion in the case at bar. It does not help appellant.

*Charping v. Toxaway Mills,* 70 S. C. 470, 50 S. E., 186. In this case the workmen, in disobedience of master's orders, assembled on a scaffold, but the case was submitted to a jury.

*Martin v. Royster Guano Company,* 72 S. C., 237, 51 S. E. 680. In this case the Court held that the servants had assumed the risk. Also that there was no testimony of negligence against defendant. In the case at bar the negligence of appellant is conceded and is not in issue.

From careful examination of the cases cited by appellant, we find no conflict in the holdings in those cases and the principles of law enunciated in this opinion.

Question 2: *Was respondent guilty of negligence that contributed to his injuries as the proximate cause thereof?*

Appellant's answer sets up the two following specifications of negligence on the part of respondent:

1. In not looking to see if the new extension board had been fastened before stepping thereon.

2. In not leaving car at opposite end, where the other extension board was fastened, and not being repaired.

The second specification was evidently withdrawn, as appellant's exception on contributory negligence in the transcript did not refer to it. We cannot consider the same now, as only questions properly raised by exception will be considered by this Court on appeal. *Graniteville Mfg. Company v. Renew,* 113 S. C., 171, 102 S. E. 18. However, for appellant's comfort, scrutiny of the record discloses no merit in the same.

We shall now consider the first specification: That ■ respondent did not look to see if the new extension board had been fastened before stepping thereon. If respondent was guilty of negligence that contributed to his injuries as the proximate cause thereof, then he cannot recover. It is well settled that contributory negligence to any extent will always defeat a recovery. *Gladden v. Southern Railway Company,* 141 S. C., 492, 493, 141 S. E., 90.

The testimony shows that when an extension board is replaced with a new one, the workman is supposed to fasten the new board at once by bolts. That Antley had ample time to fasten it, but the reason he did not do so was because the board was defective, the holes would not fit the bolts, and Antley alone knew this but did not tell respondent. Antley testified that the trouble was that the holes were not in line and admitted that he said nothing to respondent to warn him and would not say that respondent was in position to know, although he (Antley) knew the board was insecure. The respondent, on direct examination, testified:

"Q. Had Mr. Antley had sufficient time to fasten it? A. Mr. Antley had plenty of time to fasten it.

"Q. Was that a new running board extension? A. Yes, sir.

"Q. You thought it was fastened? A. Yes, sir.

A portion of Article 9, Section 15 of the State Constitution of 1895, reads: "Knowledge by an employee injured of the defective or unsafe character or condition of any machinery, ways or appliances shall be no defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars or engines voluntarily operated by them."

In the case of *Youngblood v. South Carolina & G. Railroad Company,* 60 S. C., 9, 18, 38 S. E., 232, 235, 85 Am. St. Rep., 824, this Court construed the above provision of the Constitution in the following language: "In other words, * * * where an employee is injured while voluntarily operating machinery after knowledge of its unsafe

condition, his action for injury caused thereby shall not be defeated by reason of this fact. The word 'defense' is not used in its technical sense. The words 'shall be no defense to an action' are to be understood as meaning 'shall not defeat an action.' The constitution did not intend to deal with pleadings, but with a principle of law. It did not intend that a defendant on a motion for nonsuit should get the benefit of a state of facts which the constitution declared should be no defense to the action. The object of this provision was to take from a defendant *that failed to furnish suitable machinery* the right to defeat an action by the employee by showing that he did not act with due care, in voluntarily operating the machinery after knowledge of its defective condition."

It is clear that if an injured servant has the choice of two ways to perform a duty, one entirely safe and the other obviously and greatly dangerous, and adopts the dangerous way and is injured, he would be guilty of contributory negligence, as a matter of law, and barred from recovering therefor. *Hunter v. D. W. Alderman & Sons,* 89 S. C., 502, 71 S. E., 1082. But this second exception does not charge that the way was obviously dangerous or that respondent knew of the danger, and in reality states no plausible ground why nonsuit or directed verdict should have been granted. The facts were susceptible of more than one inference and presented a question for the jury. In order to have relieved itself of liability it would have been necessary for the master (appellant) to have shown not only that respondent knew the danger, or that it was so obvious that he should have known it (which the evidence does not bear out), but also that respondent comprehended or appreciated the danger. *Barnhill v. Cherokee Falls Mfg. Company,* 112 S. C., 541, 100 S. E., 151.

"As to the question raised regarding the duty of the employer to warn the plaintiff, we deem it sufficient to state that it was a question of fact as to whether or not the plaintiff knew of the defect in the belt in question and appre-

ciated the danger in connection with the same, while the master, the defendant company in the case at bar, was charged with such knowledge as a matter of law." *Turbeville v. Avery Lumber Company,* 155 S. C., 202, 206, 152 S. E., 439, 440.

In *Tuttle v. Hanckel,* 179 S. C., 60, 69, 183 S. C., 484, 488, this Court, speaking through Justice Fishburne, laid down this clear principle of law:

"Where a servant undertakes to work in obedience to the command of the master, or his authorized agent, he is not guilty of contributory negligence unless the danger is so manifest and glaring that it must have been known that he could not do the work without injury, and where there is ground for reasonable difference of opinion as to the danger, the servant need not set up his judgment against that of his superior, whose order he is required to obey, but he may rely on the judgment of the superior." *Lowe v. Southern Railway,* 85, S. C. 363, 67 S. E., 460, 137 Am. St. Rep. 904.

"Mere knowledge of defects will not of itself give rise to the conclusion that the only inference is that the plaintiff was negligent, unless it is made to appear that the danger, likely to result there from, was so obvious that no person of ordinary prudence would have attempted to cross." *Kennedy v. City of Greenville,* 78 S. C., 124, 129, 58 S. E. 989, 991.

The law of this State is clear that whether a dangerous condition that results in a servant's injury is apparent, or such as should be apparent to one of ordinary sense and prudence, and whether a man of ordinary sense and prudence would undertake the performance of the work under such conditions, is strictly a question for the jury. *Kell v. Rock Hill Fertilizer Company, supra.*

*Howell v. Union-Buffalo Mills Company,* 121 S. C. 133, 138, 113 S. E., 577, 579, holds: "Whether the alleged defect was so obvious as to bar recovery under the law as to assumption of risk and contributory negligence, or so trivial

and obscure as to absolve the master from legal fault in not discovering and correcting it, were plainly questions for the jury under appropriate instructions of the court."

Simply because a servant remains in the service of his master after he has knowledge of a defect in an appliance furnished him by the master to perform his work, it does not necessarily follow that he is guilty of contributory negligence, as it is a question of fact for the jury to determine under all the circumstances of each particular case. *Farley v. Charleston Basket & Veneer Company,* 51 S. C. 222, 234, 28 S. E. 193, 401. *Parker v. South Carolina & Georgia R. R.,* 48 S. C., 364, 26 S. E., 669.

*Tuttle v. Hanckel, supra,* holds: "Though the employee knows of a defect in a machine at which he is working, he does not assume the risk by continuing to work at it unless the machine is so obviously and immediately dangerous that no man of common prudence would continue in the work and incur the risk."

From the testimony in this case it is clear that the defect in the extension board walkway was not obvious, and that it was known only to defendant, which made it a question of fact for the jury. *Dover v. Lockhart Mills,* 86 S. C., 229, 235, 68 S. E., 525.

Since it is the duty of a master to provide a safe place to work and safe appliances with which to work, and it not being the duty of a servant to inspect the same, a servant has the right to rely on the master and to presume that he did his duty. A servant must exercise ordinary care for his own protection, but he is under no obligation to examine appliances and places of work to discover latent defects or dangers that are not open to ordinary observation. *Stogner v. Great Atlantic & Pacific Tea Company, supra.*

In *Rowland v. Town of Dillon,* 188 S. C., 408, 410, 199 S. E. 525, 526, this Court, using our present Chief Justice as the organ, approved this sound postulate of law: *"It is*

*the established rule of this Court that the question of the
contributory negligence of the plaintiff is a question of fact
for the jury, unless there is so complete an absence of evi-
dence thereabout as to make it a question of law for the
Court."* (Italics added.)

Appellant implies that if it were negligent, that such
negligence was not as great as respondent's negli-
gence, and claims no liability. If a servant is injured
in his work, and the master and the servant are both guilty
of negligence, the master's negligence being much greater
than that of the servant's it is true that this would not
necessarily entitle a servant to recover, as the doctrine of
comparative negligence does not exist in this State (ex-
cept in cases falling within Section 8366 and 8367 of 1932
Code of South Carolina, which has reference only to rail-
road employees engaged in commerce). *Gladden v. South-
ern Railway Company, supra.* However, the test of liability
in this State, in a case founded upon negligence, is "whose
negligence is the proximate cause of the injury," and the
jury has settled this adversely to appellant.

If there is uncertainty as to the contributory negli-
gence of a servant injured while performing his
work, whether it arises from conflct in the evidence,
or because different inferences might reasonably be drawn
from the facts, the question is for the jury. *Berley v. West-
ern Union Tel. Company,* 82 S. C., 360, 64 S. E., 157.

If the respondent in this case did not know that the new
extension board was defective and that Antley had not
fastened it (he testified that he did not), he could not pos-
sibly have been guilty of contributory negligence as a mat-
ter of law. His testimony certainly raised a question for
the jury. *Chase v. Spartanburg Railway, Gas & Electric
Company, supra.*

The appellant cited no cases in its brief to sustain its
contention that the respondent was guilty of contributory
negligence. Under the facts of this case we do not think
he could.

There is ample evidence in this case to the effect that respondent's injuries resulted from appellant's negligence, and a plaintiff should not be nonsuited where there is any evidence tending to establish any negligence of a defendant as the proximate cause of the injury sued for. *Price v. American Agricultural Chemical Company, et al.,* 173 S. C. 518, 176 S. E. 352.

Under the evidence in this case there was no alternative for the Circuit Judge but send it to the jury, as, during the trial of a case, the evidence must be construed from aspect most favorable to the plaintiff when a motion for nonsuit or directed verdict is made by the defendant. *McGuire v. Steinberg et al.,* 185 S. C., 97, 193 S. E., 205.

Under the facts of this case, and the principles of law hereinabove set out, we are convinced that the fellow servant rule is not applicable, that the plaintiff was not guilty of contributory negligence, and that the trial Judge exercised a wise discretion when he overruled the motions for nonsuit and directed verdict at appropriate stages during the trial. The questions raised by the testimony were jury issues, and were properly submitted to the jury. The function of this Court is not to try cases on the facts, but correct errors of law on appeal. Constitution of 1895, Article 5, Section 4; *Rylee v. Marett,* 121 S. C., 366, 377, 113 S. E., 483.

The exceptions are overruled, and the judgment of the lower Court is affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER, FISHBURNE and STUKES concur.