**D. T. EPPS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. AC–102.**

United States District Court
E. D. South Carolina,
Columbia Division.
Oct. 12, 1960.

586.

Edens, Hammer & Glenn, Columbia, S. C., for plaintiff.

N. Welch Morrisette, Jr., U. S. Atty., George E. Lewis, Asst. U. S. Atty., Columbia, S. C., for defendant.

WYCHE, District Judge (sitting by designation).

This action was brought by the plaintiff against the United States of America under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 and 2674, to recover damages for the actionable negligence of employees of the Soil Conservation Service of the United States Department of Agriculture, acting within the scope of their employment, in preparing plans and specifications, designing, staking out, surveying, supervising and performing other activities pertaining to the construction of a dam in Clarendon County, which caused plaintiff to receive an electric shock.

The occurrence happened while the plaintiff, assisting a government employee in making a survey at the specific instance and request of the government employee, was standing near one Coker Hardy who was carrying and using, under the supervision and direction of the government employee, a surveyor's rod furnished by the government em-

ployee, through which rod a stream of electricity was conducted from an overhead power line resulting in severe and serious injuries to the plaintiff.

The case was tried before me without a jury, and in compliance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### Findings of Fact

1. During the early part of 1956 plaintiff D. T. Epps made application to the Soil Conservation Service of the United States Government to do land clearing and pond building work under the supervision of the Soil Conservation Service.

2. Thereafter, on or about May 14, 1956, he was engaged to perform work of hauling and piling dirt for the construction of a dam with a 12 foot roadway thereon on the farm land of Berry brothers in Clarendon County, South Carolina, under the supervision of the Soil Conservation Service in accordance with the plans and specifications prepared by it.

3. This dam was approved by the Soil Conservation Service for construction under the Soil Conservation program whereby the government performs engineering services on dams, which include selecting of sites, designing, surveying, staking, preparing plans and specifications, supervising of the installation and checking the work to insure compliance with government plans and specifications. Pursuant to the approval by the government, it undertook to and did engage in the foregoing activities pertaining to the construction of the dam located in Clarendon County where plaintiff was injured.

4. Prior to the commencement of work by plaintiff and his helper, one Coker Hardy, the Soil Conservation Service sent its employees experienced in engineering practices to the site of the proposed dam to collect engineering data, in order to determine, among other things, how high the dam could be built.

5. When the Soil Conservation Service employees went to the site of the proposed dam to collect the necessary engineering data, there was present and observed by them an overhead power line on the farm land, 27 feet above the surface, running diagonally across the portion of the land where the dam with the 12 foot roadway was to be built.

6. After the government employees collected the engineering data on the site they submitted a written report of this data to the office of the Soil Conservation Service to be used by it for designing and preparing the plans and specifications. This report, however, failed to include the presence of the aforementioned overhead power line which was seen by the employees who collected the engineering data.

7. The Soil Conservation Service knew of the presence of the power line over the land where the dam was to be built and the danger of locating a dam under a power line. It also knew that where a dam is to be built on land which is under a power line precautions should be taken for the safety of persons working on the dam. Nevertheless, the government failed to take any precautions for the safety of those working on the dam, particularly the plaintiff and his helper, Coker Hardy; and the failure of the government to take precautions for the safety of persons on the dam was attributable to the failure and omission of the employees of the Soil Conservation Service who collected the engineering data on the site to include in their report submitted to the office of the Soil Conservation Service any information concerning the presence of the overhead power line.

8. Pursuant to the information received by the office of the Soil Conservation Service from its employees who collected the engineering data on the site, the dam was designed and plans and specifications were prepared by the engineers of the Soil Conservation Service. The specifications provided for the dam with the roadway thereon to reach a height of 13.8 feet, thus causing a reduc-

tion of the vertical clearance to only 13 feet between the roadway of the dam and the overhead power line, whereas the minimum safety clearance is 18 feet according to the Code of Laws for South Carolina, 1952, Vol. 7, page 819. This resulted in the creation of a hazardous and dangerous condition to those working on the dam when nearing completion.

9. After the dam was designed and the plans and specifications were prepared, the employees of the Soil Conservation Service staked out the dam; and on or about May 14, 1956, the plaintiff and his helper, Coker Hardy, commenced the work of hauling and filling dirt for the dam under the supervision of the Soil Conservation Service and in accordance with its plans and specifications.

10. On May 21, 1956, when the dam was nearing completion, the plaintiff requested the Soil Conservation Service to check the elevation of the dam to determine whether the height as required by the government had been reached.

11. This check required survey work to be performed by the employees of the Soil Conservation Service and although such survey required two employees of the government to perform same—one to hold and level the surveyor's rod and the other to sight the level with an instrument on a tripod—the Soil Conservation Service sent only one of its employees to the dam to perform this work because the other employee who should have accompanied him went on leave that day.

12. When the government employee, experienced in engineering, reached the dam the plaintiff and his helper who were engaged in their work were requested by the government employee to help him in the performance of the government work of making a survey to check the height of the dam. The plaintiff and his helper thereupon laid aside the work they were doing, and the government employee then set up a tripod and sight instrument and furnished and handed to plaintiff or his helper a surveyor's rod which was 11½ feet in length to be used in making the survey.

13. Coker Hardy then proceeded to carry and use the surveyor's rod under the supervision and direction of the government employee who was using the sight instrument, and after being directed to proceed from stake to stake on the roadway of the dam which was then only 14 feet from the overhead power line, he was directed to proceed to take a level on or at a stake located directly under the overhead power line, and just as he was about to place the rod on the stake, the rod either touched or came close to the overhead wire causing a stream of electricity to arc or run directly into the rod which conducted it through to Coker Hardy and the ground nearby where the plaintiff was standing, as the result of which the plaintiff sustained severe injuries and Coker Hardy also sustained injuries resulting in his death.

14. The plaintiff received only a high school education and he had no experience with electricity. He has no special knowledge of electricity; and had never worked with it. He does not know what are conductors of electricity. Neither did Coker Hardy have any knowledge of or experience with electricity.

15. The government was negligent in creating a hazardous condition on the roadway of the dam which it knew or should have known was dangerous to persons, particularly the plaintiff, D. T. Epps, and Coker Hardy, who were likely to be, and in fact were, on the dam, by designing and specifying the roadway of the dam to be constructed to a height of 14 feet with a resultant clearance of only 13 feet between the roadway and the overhead power line when the government knew or by the exercise of reasonable care should have known before and when it commenced its activities pertaining to the construction of the dam that the power line was 27 feet above the surface of the land and the dam when completed would allow a clearance of only 13 feet between the roadway of the dam and the overhead power line although the minimum safety

clearance as required by the Statutes of South Carolina, 1952 Code, Vol. 7, page 819, is 18 feet; in failing to take into account the presence of the overhead power line before commencing and while performing its activities pertaining to the construction of the dam; in failing to report the presence of the overhead power line to its personnel who prepared the plans and specifications and who, aware of the danger of locating a dam under a power line, would have taken precautions for the safety of those on the roadway of the dam, particularly for the safety of the plaintiff and Coker Hardy; in failing to take any precautions for the safety of those on the roadway of the dam, particularly for the safety of the plaintiff and Coker Hardy when the defendant created a hazardous condition thereon, and knew or by the exercise of reasonable care should have known of the hazardous condition resulting from the proximity of the roadway on the dam to the overhead power line; in undertaking to perform and performing work pertaining to the construction of the dam, but failing to properly plan, coordinate and supervise such work; in directing Coker Hardy to carry and use a surveyor's rod to perform the government work of making a survey under an overhead power line when it knew or by the exercise of reasonable care should have known that it was dangerous to direct Coker Hardy to carry and use the surveyor's rod at the stake which was located directly under the overhead power line only 14 feet above the roadway of the dam; in failing to give Coker Hardy or the plaintiff any warning of the danger of carrying and using a surveyor's rod under the overhead power line; in undertaking to furnish and furnishing Coker Hardy with an appliance—a surveyor's rod—for his use in performing the government's work of making a survey although the said appliance was not proper and safe under the circumstances in that it was 11½ feet long, a conductor of electricity, and was directed by the government to be used under a power line which was only 14 feet above the roadway of the dam.

16. The aforementioned negligent acts and omissions of the government, acting by and through its agents and employees in the course and scope of their duties and employment, constituted the direct, proximate and efficient cause of the occurrence and resulting injuries to the plaintiff.

17. The plaintiff was not guilty of any negligence.

18. The negligent acts or omissions of the government which constituted the direct, proximate and efficient cause of the occurrence and resulting injuries to the plaintiff were committed in the performance of operational details and did not involve the exercise of discretionary functions and duties within the meaning of the provisions of Title 28 U.S.C.A. § 2680(a) that shield the government from liability for tort.

19. Prior to plaintiff's injuries he earned approximately $10,000 per year. The plaintiff sustained serious and permanent injuries; he was hospitalized for a period of 86 days, principally for treatment of very severe burns of both feet; during hospitalization numerous skin grafting procedures were necessary; amputation was necessary resulting in the loss of all toes except approximately one-half of the great toe on the left foot and the fourth and fifth toes on the right foot; there was considerable loss of muscle tissue of both feet. The plaintiff has continued to have constant pain in both feet which is worse in cold or changeable weather and has recurring blister formations on both feet; he has become nervous and rather irritable; has insomnia and frequent headaches, which symptoms are increased when in great pain. He returned to work about one year after his injury and his earning capacity since that time has been approximately $2,500 per year. The plaintiff has expended about $2,500 for hospital and medical bills. He will require further treatment and an operation

will probably be necessary to give him some relief. His disability is of a permanent nature.

### Conclusions of Law

1. This Court has jurisdiction of the parties and the subject matter of this action.

2. It is a fundamental principle of the law of negligence that one who creates a dangerous condition at a place where others are likely to be, and have the right to be, must use due care in guarding against the condition. Hill v. Carolina Power & Light Co., 204 S.C. 83, 28 S.E.2d 545; Joiner v. Fort, 226 S.C. 249, 84 S.E.2d 719.

3. It is the law in South Carolina, as it is elsewhere, that "it is not necessary to show that a person charged with negligence should have foreseen the particular consequences or injury that resulted. It is enough that he should have foreseen that his negligence would probably result in injury of some kind to some one." Glover v. Yonce, 4 Cir., 188 F.2d 870, 874; Tobias v. Carolina Power & Light Co., 190 S.C. 181, 2 S.E. 2d 686; Joiner v. Fort, 226 S.C. 249, 84 S.E.2d 719.

4. Where a plaintiff, acting under the direct supervision of a defendant, is directed and induced by such defendant to do an act which exposes the plaintiff to dangers which the plaintiff does not appreciate without any warnings with respect thereto and instructions as to how they could be avoided, the defendant is liable for the injuries to the plaintiff proximately resulting therefrom. 56 C.J.S. Master and Servant, § 291, p. 1054; Franklin v. Delgado, 5 Cir., 262 F.2d 439.

5. A person undertaking to perform work is charged with the duty of properly planning, coordinating and supervising the work and if he fails in the performance of such duty he may be held liable for injuries to persons proximately resulting therefrom. Whisenhunt v. Atlantic C. L. R. R. Co., 195 S.C. 213, 10 S.E.2d 305; Kell v. Rock Hill Fertilizer Co., 123 S.C. 199, 116 S.E. 97; Hill v. Polar Pantries, 219 S.C. 263, 64 S.E.2d 885, 25 A.L.R.2d 1080.

6. The minimum safety clearance between overhead power lines and roads in urban or rural districts is 18 feet according to the Code of Laws for South Carolina, 1952, Vol. 7, page 819.

7. Title 28 U.S.C.A. § 2680(a) provides:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise of performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

It is well settled, however, that where the wrongful acts and omissions of the government do not involve discretionary functions or duties but involve rather the performance of operational details, the government cannot claim the exemption from liability provided by Title 28 U.S.C.A. § 2680(a). Hatahley v. United States, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065; Somerset Seafood Co. v. United States, 4 Cir., 193 F.2d 631; Eastern Air Lines v. Union Trust Company, 95 U.S.App.D.C. 189, 221 F.2d 62; Pierce v. United States, D.C., 142 F.Supp. 721, affirmed 6 Cir., 235 F.2d 466.

8. Applying the foregoing principles of law and statutes to the facts in this case, I conclude that the stream of electricity which struck the plaintiff and the resulting injuries and damages to him were caused by the negligence of the defendant, acting by and through its agents and employees within the course and scope of their employment.

9. The negligence of the defendant, by and through its agents, servants and employees acting within the scope of their employment, was the direct and

proximate cause of the stream of electricity coming in contact with the plaintiff and the resulting injuries and damages to the plaintiff, without which they would not have occurred.

10. The negligent acts and omissions of the government did not involve the performance of discretionary functions and duties on the part of its employees and, consequently, Title 28 U.S.C.A. § 2680(a) is not applicable here to exonerate the government from liability.

For the foregoing reasons, it is my opinion that the plaintiff is entitled to recover judgment against the defendant for damages for personal injuries in the sum of $50,000 and

It Is So Ordered.

It Is Further Ordered, that the attorneys for the plaintiff be and they are hereby authorized to receive as a reasonable attorneys' fee twenty (20) per cent. of the amount of the aforesaid award, to be paid out of but not in addition to the amount of said award.